## EAVES *v.* THE STATE, and *vice versa.*

1. Where in a criminal case the bill of exceptions complains of the overruling of a motion for a new trial, the writ of error will not be dismissed because the motion was made and filed before sentence was pronounced upon the ac-

cused, such sentence having been pronounced prior to the suing out of the bill of exceptions.

2. No writ of error lies in favor of the State in a criminal case. Where in such case the accused by bill of exceptions complains of the overruling of his motion for new trial, this court is without jurisdiction to consider a cross-bill of exceptions, sued out by the solicitor-general in the name of the State, and complaining that the court erred in refusing to dismiss the motion for new trial filed by the accused.

3. The indictment charged definitely the State and county wherein the crime was alleged to have been committed.

4. Where one is indicted by the name of W. H. Eaves and he files a plea in abatement on the ground of misnomer, alleging that his name is and has always been Wallace H. Eaves and that he is not and never has been called or known by the name of W. H. Eaves, it is not error to strike such plea upon demurrer thereto.

5. Where a statute makes penal the unlicensed sale of spirituous, vinous, or malt liquors, the offense is committed by one who sells any one or more of such specified liquors. Where an indictment charges the accused with the sale of all three, it is sufficient to support a conviction if the evidence shows the sale of any one of the liquors charged.

6. Where one is indicted under a statute making penal the unlicensed sale of malt liquors, the court may properly charge the jury that it is not essential that the liquor sold should be proved to have been intoxicating, and that the jury need only " consider the evidence as to whether the liquor was intoxicating in determining whether it was a malt liquor." Courts can not know judicially whether all malt liquors are intoxicating.

7. If an indictment be on its face fatally defective, because based on a statute no longer in force, advantage of the defect should be taken by demurrer or by motion in arrest of judgment. In the absence of a demurrer, such defect is not ground for asking the direction of a verdict of acquittal, or, in a motion for a new trial, for setting aside a verdict of guilty as contrary to law.

8. The verdict was authorized by the evidence.

Argued May 20, — Decided July 18, 1901.

*Motion for rehearing denied July 23, 1901.*

Indictment for selling liquor without license.    Before Judge Harris.    City court of Cartersville.    April 30, 1901.

An indictment was preferred for selling liquors in Bartow county without license.    A plea of misnomer was filed, and was stricken on demurrer.    The defendant also moved to quash the indictment, and the motion was overruled.    He was tried and found guilty, and his motion for a new trial was overruled.    He excepted to each of these three rulings.    A cross-bill of exceptions was filed, upon the overruling of a motion by the solicitor-general to dismiss the motion for a new trial, upon the ground that no sentence had been passed upon the defendant prior to the filing and approval of the motion for a new trial and the brief of evidence, and therefore the

record had not been completed, and the case could not be carried to the Supreme Court while it was pending in the trial court. The court passed sentence upon the defendant before overruling the motion to dismiss.

The indictment was in the following language: "State of Georgia, Bartow Superior Court. . . The grand jurors chosen, sworn, and selected for the County of Bartow, . . in the name and behalf of the citizens of Georgia, charge and accuse W. H. Eaves with the offense of misdemeanor; for that the said W. H. Eaves, on the 1st day of September in the year nineteen hundred, in the county aforesaid, did then and there unlawfully and with force and arms sell by retail spirituous, vinous, and malt liquors without first obtaining a license from the authorities authorized by law to grant license for the sale of such liquors by retail." The plea of misnomer was upon the ground that the defendant's name is and has always been Wallace H. Eaves, and that he is not and never hás been called or known by the name of W. H. Eaves. The motion to quash the indictment was on the ground that it does not set forth the State and county nor the State or county in which the crime was committed.

The evidence for the State tended to prove that the defendant sold a fluid known as white hops, which contained nearly four per cent. of alcohol, and which contained the elements of lager beer. The first special ground of the motion for new trial is that the court erred in charging the jury: "It is not necessary for the State to prove that the liquors sold by the defendant were intoxicating. It makes no difference whether the liquors were intoxicating or not. If you find from the evidence that he sold malt liquors without first obtaining a license from the proper authorities to do so, it would be your duty to convict him; but you may consider the evidence as to whether the liquor was intoxicating, in determining whether it was a malt liquor." It is contended that it is no violation of law to sell non-intoxicating liquors without a license, and that the charge was erroneous for this reason.

The defendant contended that, under the charge in the indictment, it was necessary to a conviction that it should be proved that the liquors sold were spirituous, vinous, and malt, and not merely one of these three. The court charged to the contrary, and held that proof of a sale of malt liquor would authorize a conviction.

The other grounds of the motion for new trial are, in substance, that there can be no legal conviction on this indictment, because the sale of such liquors as are therein mentioned was absolutely prohibited by the local prohibition law for Bartow county, as set out on pages 503 and 541 of the Acts of 1884–85, it being conceded that this law had been adopted by a vote of the people of that county; and that the license laws were suspended by that act, and no authority to grant a license for the sale of such liquors existed. This contention was raised in the argument on the trial; but the court refused to charge the jury in accordance therewith.

*J. M. Neel,* for plaintiff in error.

*S. P. Maddox, solicitor-general,* contra.

SIMMONS, C. J. In this court motions were made to dismiss both the main and the cross bills of exceptions.

1. The motion to dismiss the main bill of exceptions was upon the ground that there had been no final disposition of the case in the court below at the time the motion for new trial was made and filed. It appears that this same reason was advanced in the court below for dismissing the motion for new trial, and that the trial judge pronounced sentence upon the accused and then refused to dismiss the motion for new trial. There was, therefore, a final disposition of the case in the court below before the bill of exceptions was sued out to this court. Even if the bill of exceptions complained of nothing except the overruling of the motion for new trial, we think it is no sufficient ground for dismissing it that there had been no final disposition of the case at the time the motion for new trial was made. Before a writ of error can be sued out to this court, the case must be finally disposed of in the court below, unless the decision complained of would, if rendered as claimed by the plaintiff in error, have finally disposed of the cause; but our attention has been called to no requirement of this sort in connection with the making of a motion for a new trial. Such a motion seeks merely to set aside the verdict, and does not go to errors in the sentence or judgment. Under the common-law practice it had to be made *before* sentence or judgment (14 Enc. Pl. & Pr. 863), but under our system it is in time if filed during the term and within thirty days from the date of the verdict (*Castellaw v. Blanchard,* 106 *Ga.* 97), whether it be before or after sentence or

judgment. Certainly there was a final disposition of this case before the bill of exceptions was sued out; and the motion to dismiss the writ of error must be overruled.

2. The motion to dismiss the cross-bill of exceptions was upon the ground that the " State is not entitled to have and maintain [a] writ of error or to be plaintiff in error in a criminal case, or to be heard on its bill of exceptions therein, under the law of this State." That, in this State, a writ of error does not ordinarily lie in favor of the State or of a municipal corporation of the State, in a criminal case, is established. *State* v. *Jones*, 7 *Ga.* 422; *State* v. *Lavinia*, 25 *Ga.* 311; *Cranston* v. *Augusta*, 61 *Ga.* 572; *State* v. *Johnson*, 61 *Ga.* 640; *Mayor etc. of Hawkinsville* v. *Ethridge*, 96 *Ga.* 326; *Mayor etc. of Macon* v. *Wood*, 109 *Ga.* 149. In fact that question is settled by the Civil Code, which provides (§ 5527) for a bill of exceptions by "either party in any civil cause and the defendant in any criminal proceeding;" and by the Penal Code, which provides (§ 1070) for exceptions by "the defendant in any criminal proceeding." The Civil Code does further declare (§ 5527) that "when the successful party to any cause, . . which is carried to the Supreme Court by the unsuccessful litigant, files a cross-bill of exceptions," the questions therein made shall be, with certain exceptions, heard and determined; and that (§ 5535) 'if a defendant in error excepts in any case by bill of exceptions, he shall prepare his bill of exceptions and proceed" much as does the plaintiff in error in the main bill of exceptions. These sections, however, seem clearly to refer to cross-bills in civil cases only. Judge Nisbet, in *State* v. *Jones*, 7 *Ga.* 425, said: " In criminal trials, the State — the supreme authority—that authority which makes the law and prescribes its penalty and executes its judgments — moves against the citizen. The court, the jury, and the solicitor-general are its agents. The State is not a party — the State is rather an accuser — she charges crime, arrests, tries, convicts, and executes. In criminal causes the State, through her agents, is the judge who tries the accused. In civil cases she stands aside and leaves the parties to litigate upon equal terms before a tribunal independent of both. Thus unequally do the State and the defendant enter upon an issue, the result of which may involve the liberty or life of the one, and no *sensible* consequence to the other." "The law . . declares that 'any criminal cause may be carried up to the Supreme Court, on a bill of ex-

ceptions . · . to be drawn up by *the party, his* counsel or attorney,' &c., &c. If the view I have taken, that in a criminal cause the State can not, in any just sense, be considered a *party* [be correct], then the word *party* does not embrace the State, and applies alone to the defendant. The use of the personal pronoun *his* indicates a person, to wit: the defendant. Neither in law language nor in common parlance is it usual to indicate *a State* by the use of a personal pronoun of the masculine gender." And in *State* v. *Lavinia*, 25 *Ga.* 311, the court, after expressing the opinion that the act giving a right to certiorari to "either party" did not give such right to the State but only to a party defendant in a criminal proceeding, followed *State* v. *Jones*, supra, and ruled "that a writ of error does not lie to this court, in a criminal case, at the instance of the State." Much of the above reasoning applies to the question now under discussion. The language of the code as to the "successful party to any cause" is evidently used with reference to civil causes only; for, as pointed out by Judge Nisbet, the State is not, within the meaning of the law giving the right to a writ of error, a "party" to a criminal case. It is also significant that while the Penal Code (§ 1076) declares that in a criminal case the copy bill of exceptions shall be served upon the solicitor-general, no provision is made for service of a cross-bill of exceptions or of any bill of exceptions by the solicitor-general upon the accused. In view of the general law which denies the right of the State to a writ of error in a criminal case, of the absence of any express provision for a cross-bill of exceptions in behalf of the State in such a case, and of the use of such language with reference to cross-bills of exceptions generally as would seem to exclude the State in criminal cases, we hold that the State is without any right to a writ of error in a criminal case by either main or cross bill of exceptions. The cross-bill filed in·the present case was not authorized by law, and this court is without jurisdiction to entertain the writ of error.

3. The indictment in this case had not the prescribed caption giving the State and county, but, instead, gave the State and the name of the court. It was contended that the allegation that the offense was committed "in the county aforesaid" had nothing to which to relate, and that, for this reason, the indictment failed to set forth the State and county in which the crime was alleged to have been committed. An examination of the indictment will show

that, preceding the expression "in the county aforesaid," there were recitals that the grand jurors were selected for the county of Bartow, and that the charge was in the name and behalf of the citizens of Georgia. These recitals, taken in connection with the caption "State of Georgia, Bartow Superior Court," were sufficient to show clearly that the words "in the county aforesaid" related to Bartow county, State of Georgia. This State and county had been set out, and no other State or county mentioned or referred to. It was, therefore, proper to overrule the motion to quash the indictment on this ground.

4. The plea in abatement on the ground of misnomer was stricken upon demurrer thereto. The indictment set out the initials only of the given names of the accused. It is of course best that an indictment should set forth the full Christian name and surname of the accused, but there are cases in which this can not be done. It may be necessary to rely upon another form of description or a fictitious name may have to be employed. " If a part only of a name is known, it should be given, supplemented by the proper excuse for not stating the rest." 1 Bish. New Crim. Proc. § 676, 4. Instead of the true name, the indictment may employ any name by which the accused is commonly called or known. *Wilson* v. *State,* 69 *Ga.* 224; 14 Enc. Pl. & Pr. 277. "In this State men are frequently as well known by their initials as by their given or Christian names in full. . . The rule of law as to two names for the same person is, that either is sufficient when the individual is equally as well known by the one as by the other; and there is at this day no substantial reason for not applying the rule between two usual and customary forms of writing a name. Without shutting the eyes to all the light that surrounds us, there can be no presumption that particular men are less known by their initials than by their given names in full." *Minor* v. *State,* 63 *Ga.* 318. See also State v. Johnson, 93 Mo. 317, 6 S. W. 77. We are aware that in some of the States it has been held that an indictment setting forth by initials only the Christian name of the accused is subject to a plea in abatement. We think, however, that these cases should not now be followed. They are based upon English cases of early date, and the reasons for them do not apply at the present time. In this State men are commonly known by the initials of their Christian names as well as they are by those names in full. Such initials, followed by

the surname in full, are held to constitute a sufficient description when used in deeds, wills, and other writings. Signatures and addresses in this form are in much more frequent use than those setting forth the full name. We can not see why the same reason by which such a statement of a name is held good in a deed should not be applied in case of a criminal indictment. If as matter of fact the grand jury intended to indict some person other than the one arrested and put upon trial, this can be shown under a plea of not guilty. The person arrested would be in a position exactly similar to that of a person arrested for another person against whom an indictment has been found giving his full name which is identical, with respect to the Christian name as well as the surname, with that of the person arrested. The substantial question, after all, is as to the identity of the person indicted and the one on trial. If there is no such identity, an acquittal must follow, for there would be a failure to make out the charge. If the person is the same, then a conviction should not be postponed or averted by showing merely that the grand jury described the accused without giving more than the initials of his Christian name. We still think it best that the indictment should, where no reason to the contrary exists, set forth the full name ; but we think that a failure to state the Christian name more fully than by initials should not be good ground for a plea in abatement, where those initials are correctly stated and are the initials of the person accused and tried. For these reasons, we think that the trial judge did not err in striking, upon demurrer, the plea of misnomer filed in the present case.

5. The law under which the accused was indicted makes penal the unlicensed sale of spirituous, vinous, or malt liquors. Under this act the offense is committed by one who sells either spirituous liquors, vinous liquors, or malt liquors, or any two of such liquors, or all three of them. See *Hardison* v. *State*, 95 *Ga.* 339. An indictment charging the accused with having sold spirituous, vinous, *or* malt liquors would have been bad for uncertainty. *Grantham* v. *State*, 89 *Ga.* 121. The indictment should charge the sale of one of these liquors or, conjunctively, of two or of all of them. 1 Bish. New Cr. Proc. § 436. The indictment in the present case charged the sale of spirituous, vinous, *and* malt liquors. Under this indictment it was not necessary to prove that all of these liquors were sold by the accused, but merely to prove the sale of any one

of the three. The plaintiff in error contended that the words " spir-
ituous, vinous, and malt" are used in the indictment as adjective
and descriptive terms and not as substantive terms, and that it was
therefore necessary to prove them as laid. In this we can not
agree. While the terms are adjectives and descriptive, it is evident
that each is used as separately relating to the term " liquors," so
that the indictment really charged the accused with selling spirit-
uous liquors and vinous liquors and malt liquors. This being true,
it was necessary only to prove the sale of one of such liquors.
The indictment "may allege, in a single count, that the defendant
did as many of the forbidden things as the pleader chooses, em-
ploying the conjunction *and* where the statute has ' or,' and it will
not be double, and it will be established at the trial by proof of
any one of them." 1 Bish. New Cr. Proc. § 436. See also Bish.
Stat. Cr. (3d ed.) § 244; *Wingard* v. *State*, 13 *Ga.* 397.

6. Complaint is made that the court charged that the State did
not have to prove that the liquors sold were intoxicating, and that
it made no difference whether the liquors were intoxicating or not.
This we think was not error. The statute made penal the unli-
censed sale of malt liquors, and the offense would be established if
the State proved such a sale. We can not see what relevancy the
intoxicating qualities of the liquors could have save in determining
whether or not they were malt liquors, and as to this the court
charged the jury to consider the evidence as to whether the liquors
sold were intoxicating, in determining whether they were malt liq-
uors. The point is made that the court should take judicial cog-
nizance that malt liquors are intoxicating, and that a liquor not in-
toxicating is not a malt liquor. Courts are not agreed as to whether
judicial notice should be taken that beer is intoxicating (*Blanken-
ship* v. *State*, 93 *Ga.* 814), and certainly courts can not know ju-
dicially that all malt liquors are intoxicating. What numerous
forms and kinds of malt liquor there may be, and whether all of
them are intoxicating, we can not know judicially. The statute
under which the accused was indicted was designed to prevent an
unlicensed sale of spirituous and vinous liquors and of all malt liq-
uors, whether intoxicating or not. Even if all malt liquors are, as
matter of fact, intoxicating, the State need not show the intoxicat-
ing qualities of the liquors sold, if it can show in other ways that
such liquors were malt liquors.

7. From the indictment it may be ascertained that the accused is charged with the violation of a certain penal statute. The accused contended that this act was no longer in force in Bartow county, having been superseded by another act. He sought to make the question in the lower court, by requesting the judge to instruct the jury that a conviction could not be had under the indictment. In the motion for new trial complaint is made that the judge refused to so charge. The motion also sets up that the verdict is contrary to law, in that the indictment was based upon this inoperative statute. The question was not raised by demurrer to the indictment, the allegations of which were sufficiently established by the evidence. There was no motion to quash the indictment. The question was never properly raised. If the plaintiff in error was indicted under a law no longer in force and the indictment is fatally defective, he does not want a new trial under that indictment. "In such a case the remedy is by general demurrer before a trial on the merits, or by motion in arrest after verdict." *Roberts* v. *Keeler*, 111 *Ga.* 186. After going to trial upon the merits without objection to the indictment, the accused could not properly ask the direction of a verdict in his favor because of the insufficiency of the indictment. See *Bray* v. *Railroad Co.*, 113 *Ga.* 308; *Strouse* v. *Kelly*, 113 *Ga.* 575. Nor can this point be made in a ground of a motion for a new trial complaining that the verdict is contrary to law and the evidence. See *Phillips* v. *Railway Co.*, 112 *Ga.* 197; *Roberts* v. *Keeler*, supra. In the absence of objection to such an indictment, a conviction is authorized if the evidence sustains the allegations of the indictment as laid. Without regard, therefore, to the merits of the point sought to be raised, we must affirm the overruling of these grounds of the motion for new trial.

8. The verdict was authorized by the evidence.

*Judgment affirmed. Cross-bill dismissed. All concurring.*