20857. NEELEY *v.* THE STATE.

DECIDED DECEMBER 18, 1930.

*Duke Davis,* for plaintiff in error.

*L. L. Meadors, solicitor,* contra.

LUKE, J. The indictment in this case is substantially as follows: "I, Leon Meadors, solicitor City Court of LaGrange, . . charge and accuse J. W. Neeley . . with the offense of cheating and swindling, for that the said J. W. Neeley . . did, on or about the 17th day of February, 1930, approach T. J. Moore for the purpose of buying an automobile from him, and agreed on a certain car and the price to be paid for same, and at the time stated to said Moore, owner of the car, that he, said Neeley, did not have enough money to pay for the car in full, . . that a Mr. Benefield would indorse a note at the Industrial Loan and Investment Company for the amount of $75 for him, provided another indorser was obtained. T. J. Moore agreed to indorse the said note, along with the said Benefield, for the said Neeley, provided the entire amount borrowed was paid to said Moore on said car. Neeley signed said note with Benefield and Moore as indorsers, and carried said note to the Industrial Loan and Investment Company for the money, but, before the money was paid, Benefield went to the bank and erased, or had erased, his, the said Benefield's, name, from off the note; whereupon said Neeley came back to said Moore and stated to him that Benefield had come off the note at the bank, and that the trade for the car, as well as the effort to borrow the money, was at an end. Notwithstanding this, the said Neeley,

on the 17th day of February, 1930, after the said Benefield had erased his name from off the note, did then and there unlawfully, without the knowledge or consent of T. J. Moore, indorser aforesaid, have another person not financially responsible to sign the note as indorser, and the said Neeley unlawfully, fraudulently, and with intent to defraud, negotiated said note by delivering it to the said Industrial Loan and Investment Company and obtained thereon the sum of $75 without the consent and without the knowledge of the said Moore, and after the original transaction above mentioned had been closed. As a result of the unlawful and fraudulent use of said note aforesaid, said Neeley obtained the sum of $75, and has failed to pay the same, and the said T. J. Moore, as indorser aforesaid, has paid the sum of $16.50, leaving a balance due, to the loss and damage of the said Moore in the sum aforesaid."

T. J. Moore testified, in substance, that defendant told witness that he, defendant, wanted witness "to get up a used car cheap for him;" that defendant liked the car and wanted to buy it, but did not have the money; that defendant told witness that he could get Herman Benefield to indorse defendant's note for $75, provided some one else would indorse it; that witness agreed to indorse the note upon condition that the $75 borrowed should be paid to him; that witness was to sell the car for $90 and "take a note on the car to secure him for indorsing the note;" that defendant brought the note to witness with Benefield's indorsement thereon and witness indorsed it and defendant carried the note away; that later defendant approached witness and told him that "Benefield had come off the note and he would not take the car—that he would not go any further with it, with the car, and would not use the note;" that defendant said he had the note with him, but that witness did not see it; that witness "told him all right then," and "he went away;" that witness knew nothing further about the matter until some time afterwards when he received a notice from the Industrial Loan & Investment Company that the payments on the note were in default; that upon investigation witness found that without his consent defendant had substituted for Benefield another indorser, who was not financially responsible; and that witness had made two payments on the note, amounting to $16.50, and that the balance would have to be paid by him "as the monthly payments fell due."

Mr. Benefield testified that after he had indorsed the said note he ascertained that the defendant proposed to purchase an automobile with the money to be borrowed, and went to the lender and had his name erased from the paper, because he did not think defendant was able to own a car, and that defendant procured another indorser in his stead, who was not financially responsible.

D. A. Leman, manager of Industrial Loan and Investment Company, testified: that defendant wanted to borrow money from his concern; that he told the defendant that he would have to have two indorsers; that defendant brought the note back with Benefield's and Moore's names thereon as indorsers; that before any money was paid out on the paper Benefield said he wanted to come off the note, and that witness erased his name therefrom in his presence and sent defendant word that he would have to get another indorser; that Neeley got the note and later returned with another indorser on it and got the money; that witness did not have a distinct recollection as to who made the first payment—that it might have been Neeley; and that Moore made the next two payments.

Next, "the State introduced the note in question, bearing date of February 17, 1930, signed by J. W. Neeley and indorsed by T. J. Moore and one other indorser, not Benefield, for the sum of $75, payable in monthly installments of $8.25." The defendant introduced no evidence, and made no statement, and the case closed.

1. The only special ground of the motion for a new trial complains that the court erred in refusing to grant counsel's motion to rule out "all the evidence adduced by the State on the trial," upon the ground that "the same was irrelevant and immaterial, and did not prove any offense against the laws of Georgia." All the witnesses testifying in the case are specifically mentioned in the ground, but no testimony is set out therein, either in form or substance. Neither does the substance of said note appear from the ground. It is perfectly clear that this ground is too incomplete for the consideration of this court.

2. Next we come to consider the general grounds. In this connection we will state that no appropriate objection was made to the accusation at any time, and that the evidence supports the charge made therein. In *Eaves* v. *State,* 113 *Ga.* 749 (7) (39 S. E. 318), it was said: "If an indictment be on its face fatally defective, because based on a statute no longer in force, advantage of the de-

fect should be taken by demurrer or by motion in arrest of judgment. In the absence of a demurrer, such defect is not ground for asking the direction of a verdict of acquittal, or, in a motion for a new trial, for setting aside a verdict of guilty as contrary to law." See, in this connection, *Boswell* v. *State,* 114 *Ga.* 40 (2), 41 (39 S. E. 897); *McDonald* v. *State,* 126 *Ga.* 536 (55 S. E. 235); *Gravitt* v. *State,* 165 *Ga.* 779 (142 S. E. 100), affirming the judgment in the same case in 36 *Ga. App.* 301 (136 S. E. 829). Having reference to an indictment alleged to be fatally defective, because based on a statute no longer in force, the decision in the *Eaves* case, supra, concludes thus: "In the absence of objection to such an indictment, a conviction is authorized if the evidence sustains the allegations of the indictment as laid. Without regard, therefore, to the merits of the point sought to be raised, we must affirm the overruling of these grounds of the motion for a new trial." Since, in the case at bar, no objection was made to the accusation, and the evidence supports the allegations made therein, the trial judge did not err in overruling the general grounds of the motion for a new trial.

*Judgment affirmed.* *Broyles, C. J., and Bloodworth, J., concur.*