# Dinkins *v.* The State.

*Selling Liquor Without a License.*

(Decided Feb. 14th, 1907.  43 So. Rep. 114.)

*Intoxicating Liquors; Offense; Liquor's Prohibited; Malt Liquor.*—
    Under Acts 1886-87, p. 665, it is an offense to sell a fluid containing malt, or a weak solution of malt liquor, although such liquid is without intoxicating effect.

APPEAL from Montgomery City Court.
Heard before Hon. W. H. THOMAS.

Oliver Dinkins was convicted of selling liquor without a license, and appeals. Reversed and remanded.

HILL, HILL & WHITING, for appellant.—The court erred in giving the affirmative charge for the state. At most it was a question to be submitted to the jury as to whether the defendant was guilty.—*Tinker v. The State,* 90 Ala. 647; *Alred v. The State,* 89 Ala. 112; *Brantley v. The State,* 91 Ala. 47; *Hinton v. The State,* 132 Ala. 29.

MASSEY WILSON, Attorney General, for State.—It was wholly immaterial whether the liquor was intoxicating or not.—*Feibelman v. The State,* 130 Ala. 122. The burden was on the defendant to show that he has a license. —*Heath v. The State,* 99 Ala. 179; *Freiberg v. The State,* 94 Ala. 91.

DENSON, J.—The indictment is in Code form, as provided by section 5077 of the Code of 1896, and under

it "any act of retailing in violation of the law may be proved and for any violation of any special and local laws regulating or prohibiting the sale of vinous, spirituous or malt liquors within the place specified, such form shall be good and sufficient." By an act of the General Assembly approved February 28, 1887 (Acts 1886-87, p. 665), the sale, giving away, or otherwise disposing of vinous, spirituous, or malt liquors in the county of Montgomery, outside of the corporate limits and police jurisdiction of the city of Montgomery, is prohibited and penalized. The proof in the instant case tends to show the sale of a tonic in bottles labeled "Cook's Malt Tonic," and also tends to show that the tonic was a fluid, that it contained some malt and was a "weak solution of some malt liquor," but that it had no intoxicating effects.

It is insisted by the defendant (appellant) that, to authorize a conviction, it was incumbent on the state to show that the fluid sold contained an appreciable quantity of malt liquor, or that the malt was the predominant element; and *Brantley's Case,* 91 Ala. 47, 8 South. 816, is cited and relied on in support of the contention. In that case the indictment was in the same form as the one here, and it was sought to secure a conviction under a local statute which prohibited the sale, giving away, or otherwise disposing of vinous, spirituous, or malt liquors, intoxicating bitters, or any other intoxicating drink, by proof of a sale of intoxicating bitters known as "Harter's Wild Cherry Tonic," or "Cherry Bitters"; and the court did hold that, in order to secure a conviction under the indictment, it was indispensable to show that the bitters sold contained an appreciable quantity of one of the classes of liquors specified in the indictment. This ruling is based upon the satisfactory reasoning that, as the form of the indictment is exclusive in respect to all liquors not mentioned therein, a conviction could not be sustained under it on proof of a sale of intoxicating bitters, unless such bitters contained an appreciable quantity of one of the classes of liquors specified in the indictment.—*Allred's Case,* 89 Ala. 112, 8 South. 56. In *Feibelman's Case,* 130 Ala. 122, 30 South. 384, the defendant was "indicted, tried, and con-

victed for selling vinous, spirituous, or malt liquors without a license and contrary to law." The statute under which the conviction was had prohibited the selling of spirituous, vinous, or malt liquors, or intoxicating bitters or beverages, within three miles of Ruhama Baptist Church, Jefferson county (Acts 1880-81, p. 156). It was shown on the trial of the case that the defendant, at East Lake, within three miles of said church, sold a liquor known as "Hop Jack," which contained from 1 3-4 to 2 per cent. alcohol, and that it was produced by fermentation of malted barley, diluted with water, and was, therefore, a malt liquor; but it was not capable of producing intoxication. The defendant moved to exclude all the testimony upon the ground that "the beverage shown to have been sold by the defendant was not within the statute, and that 'Hop Jack' was not intoxicating." The court, through McCellan, C. J., reviewing the ruling of the court overruling the motion to exclude the evidence, said: "We may, for all the purposes of this case, concede, without indicating any opinion upon the question, that the Legislature may not, in the exercise of police power, prohibit the sale of malt liquor which is not intoxicating nor otherwise deleterious in any way, where the sole purpose and object is the prevention of the sale of that particular character or quality of malt liquor. But it is common knowledge that most malt liquors are intoxicating and harmful when used excessively, and are capable of excessive use as a beverage. The sale of all such, of course, the Legislature has the power to prohibit. But, if the prohibition should go only to the sale of intoxicating malt liquors, there would be left open such opportunities for evasions and there would arise such difficulties of proof as the law could not be effectively executed; and the law makers having the undoubted power to prohibit and to prevent the sale of intoxicating malt liquors, and to enact to that end a law which can be executed so as to secure it, and finding that this cannot be accomplished without extending the prohibition to all malt liquors, whether intoxicating or not, such extension, necessary to prevent the sale of intoxicants, is as essentially the proper exer-

[Dinkins v. The State.]

cise of the police power as the inhibition with reference to intoxicants."

The effect of the ruling in that case is that the sale of all malt liquor, whether containing sufficient quantity of malt to produce intoxication or not, or whether malt is the "predominant element" or not, may be prohibited by the Legislature.—*Evan's Case,* 113 Ga. 749, 39 S. E. 318; *State v. O'Connell,* 99 Me. 61, 58 Atl. 59. There can be no doubt in the instant case that the evidence tended to show the fluid sold by the defendant was composed partly of malt, and herein the case differentiates from the *Brantley Case, supra,* and falls within the influence of the *Feibelman Case,* supra; and under the rule as declared in *Feibelman Case* it is of no consequence that the fluid contained in the bottles sold to the state's witness and labeled "Cook's Malt Tonic" did not contain malt in sufficient quantity to produce intoxication, or that malt was not the predominant element in the fluid. If it was composed in part of malt liquor. the sale of it is inhibited by the act of the General Assembly of February, 1887, and the defendant might be convicted under the present indictment for selling it. We think, however, that the evidence as shown by the record, in respect to the fluid containing malt, is not so free from adverse inferences as authorized the court to give the affirmative charge in favor of the state or the defendant. The question should have been submitted to the jury under appropriate instructions by the court. In giving the charge for the state, the court committed reversible error. There is no error in the refusal of the charge asked by defendant.

The judgment is reversed, and the cause remanded.

TYSON, C. J., and HARALSON and SIMPSON, JJ., concur.