# Elder *v*. The State.

### *Violating Prohibition Law.*

(Decided June 30, 1909.   50 South. 370.)

*Intoxicating Liquors; Statute; Constitutionality.*—The act of Aug. 13, 1907, (General Acts 1907, p. 693.)  is violative of section 45 of the Constitution of 1901, and hence, invalid.

APPEAL from Selma City Court.

Heard before Hon. J. W. MABRY.

Frank Elder was convicted of violating a prohibition law, and he appeals.  Reversed and remanded.

PETTUS, JEFFRIES & PETTUS, COLEMAN, DENT & WEIL, and A. D. PITTS, for appellant.  The act was unconstitutionally passed.—*Roberson v. The State,* 130 Ala. 164; *Ex parte Howard-Harrison Co.,* 119 Ala. 484; *Montgomery B. Wks. v. Gaston,* 125 Ala. 425.  The act is unconstitutional because violative of section 45 of the Constitution of 1910.—*City of Mobile v. L. & N. R. R. Co.,* 124 Ala. 133; *Lindsey v. U. S. Assn.,* 120 Ala. 156; *State v. Davis,* 130 Ala. 157; *Yahn v. Merritt,* 117 Ala. 485; *Builders Sup. Co. v. Lucas,* 119 Ala. 202; *Williams v. The State,* 91 Ala. 14; *Randolph v. Bonders Sup. Co.,* 106 Ala. 501.  The act is invalid as an exercise of the police power of the state.—*Mulger v. Kansas,* 123 U. S. 623; *State v. Gearhardt,* 33 L. R. A. 213; *Bessett v. The People,* 56 L. R. A. 558.  The act is also violative of section 66 of the Constitution, and section 125.—*Stein v. Leeper,* 78 Ala. 517; *Abernathy v. The State,* 78 Ala. 411; *Moog v. Randolph,* 77 Ala. 597.  The act was repealed by the general prohibition act.—*Hammock v. Loan Co.,* 105 U. S. 77; 26 A. & E. Ency of Law, 613.

Counsel discuss the assignments of error relative to the admission of evidence, but it is not deemed necessary to be here set out.

ALEXANDER M. BARBER, Attorney-General, and THOMAS W. MARTIN, Assistant Attorney-General, for the State. The act was not unconstitutionally passed. It is evident that the changes found from time to time in the title and body of the act are clerical errors such as this court ought to correct.—26 A. & E. Enc. of Law, 655; *Moody v. Stevenson*, 1 Minn. 401; *Graham v. R. Co.*, 64 N. C. 631; *Bird v. Kenton County*, 95 Ky. 195; *O'Hara v. The State*, 121 Ala. 28. The act is not unconstitutional otherwise.—*Feibelman v. The State*, 130 Ala. 122; *Dinkins v. The State*, 149 Ala. 49; *Lambey v. The State*, 151 Ala. 86; *Marks v. The State* in MS. Counsel discuss other questions assigned as error, which is unnecessary to here set out.

DOWDELL, C. J.—The defendant was convicted on an indictment preferred against him for the violation of the statute approved August 13, 1907 (Gen. Acts 1907, p. 696), entitled "An act to prohibit the sale of hop-jack, hop-tea, hop-weiss, hop-ale, malt tonic, or other beverages, the product of maltose or gencose, at any place where the sale of spirituous, vinous or malt liquors are prohibited by law." The indictment contained three counts. The third count having been charged out, on the conclusion of the evidence in the case, at the instance and request of the defendant, what we may have to say will have reference only to the first and second counts.

The first question presented for our consideration goes to the constitutionality of the act under which the defendant was indicted and convicted. This question is raised both by demurrer to the indictment and by written charges requested to be given to the jury. The constitutionality of the act is assailed upon several

grounds; the first being that there was a failure to comply with certain provisions of the Constitution in the passage of the act. The point taken is that the bill as passed by the Senate is not the same bill as the original bill introduced in and passed by the House, and that the bill as signed by the Governor is not the same as either the bill passed by the Senate or that passed by the House.

The bill in which the act in question had its inception was originally introduced into the House, and was known as "House Bill No. 928," and bore the title hereinabove set out. The journal of the House shows (and this is not disputed) that there was a strict compliance with all constitutional requirements in its passage through that branch of the General Assembly. The journal of the Senate shows that in the "message from the House," reporting the passage of House Bill 928, the word "glucose" appears in the title of the bill, instead of the word "gencose" as contained in the title of the bill as the same passed the House. This word "glucose," as appears from the Senate Journal, was retained in the title to the bill through its course of passage in the Senate, up to and including the final vote upon third reading. The House Journal then shows that, in the "message from the Senate" of the passage of the bill by that body, the word "gencose," and not "glucose," appears in the title of the bill as originally introduced into the House and passed by that body. There is nothing in the Senate proceedings to show that the bill, in its passage through that body, was ever changed by amendment made for that purpose, nor is there any pretense in argument that such thing was done. It further appears that in the title to the bill (House Bill 928), as signed by both the Speaker of the House and the President of the Senate, the word used is "gencose,"

and not "glucose." From this history of the passage of the bill through both houses, we are of the opinion that the word "glucose," where it appears in the Senate proceedings, is merely a clerical misprision, and, being such, will not affect the validity of the law.

The next point taken is that the journal of the Senate does not show a signing of the bill, as it passed the two houses, by the President of the Senate. This insistence is based upon the following recital in the journal of the Senate. "The President of the Senate, in the presence of the Senate, immediately after their titles had been publicly read at length by the Secretary, signed the above Senate Bills, the titles of which are set out in the foregoing message from the House; the reading at length of said bill having been dispensed with by a two-thirds vote of a quorum of the Senate present." Immediately preceding this recital, recorded on the journal of the Senate, is the message from the House, which is as follows: "Mr. President: The Speaker of the House having signed the following House Bills, your signature thereto is requested." Then follow the House Bills specified, included in which is the House Bill in question. It is evident that the words "Senate Bills," employed in the recital from the journal above set out, in the connection and order in which they are used, are merely a clerical misprision, and that "House Bills" (and not "Senate Bills") were intended.

The next point taken is that, in section 1 of the body of the act as approved by the Governor, the words "maltacc" and "gencase" are used, instead of the words "maltose" and "gencose," as employed in section 1 of the act as passed by the House and Senate. It is insisted in argument, for this reason, that the bill as passed is not the one signed and approved by the Governor, and, therefore is offensive to the Constitution. To de-

[Elder v. The State.]

monstrate that this is another clerical error, occurring in the enactment of this law, it is only necessary to set out in full section 1 of the act, which is as follows : "That it shall be unlawful to sell, give away, or otherwise dispose of hop-jack, hop-tea, hop-weiss, hop-ale, malt tonic or any other beverage which is the product of maltace or gencase, or, in which maltose or gencose is a substantial ingredient, at or in any place where the sale of spirituous, vinous or malt liquors is prohibited by law." It is evident, we think, from the context, that the words "maltose" and "gencose" were intended in the statute, where "maltace" and "gencase" are used. The words "maltose" and "gencose" are the ones employed in the title to the act. Moreover, when taking into consideration the fact that there are no such words as "maltace" and gencase" (and, we may add, we know of no such word as "gencose"), there can be no doubt that the employment of these words is a mere clerical error, and that only "maltose" and "gencose" could have been intended. Clerical errors, which are patently such on their face, will not operate to invalidate an otherwise valid enactment. It would be unreasonable to hold that the lawmakers intended to render nugatory a law of their own creation by the employment of meaningless words in its enactment.

The constitutionality of the act is further assailed upon the ground that the attempted legislation is not within the police power of the state and is an unwarranted invasion of the rights of the citizen. The argument is based upon the theory that the Legislature has no power to prohibit the sale of an article which is not injurious to either the health or morals of the people. If it should be conceded that the articles, the sale of which is prohibited by the act, are not in themselves injurious to health or morals, still there can be no doubt

under former decisions of this court, that to prohibit the sale of the articles mentioned is not without legislative competency. To prohibit the sale of malt liquors is undeniably within the police power of the state. The exercise of this power by the Legislature, in the prohibition of the sale of malt liquor, is upon the idea of the conversation of public morals. To this end it must logically follow that it is equally within the police power of the state, through its lawmakers, to enact any and all laws in their wisdom necessary to prevent any evasion of the primary purpose. If, in the wisdom of the Legislature, in order more thoroughly to prohibit the sale of malt liquor, which is known to be an intoxicant, and to safeguard against evasions of such law, it should be deemed necessary to prohibit the sale of any and all beverages containing as an ingredient "maltose," a known constituent of malt liquor, we are unable to see why such legislation would not reasonably come within the exercise of the state's police power.

In *Feibelman v. State,* 130 Ala. 122, 30 South. 384, it was said by this court, speaking through McClellan, C. J.: "It is common knowledge that most malt liquors are intoxicating and harmful when used excessively, and are capable of excessive use as a beverage. The sale of all such, of course, the Legislature has the power to prohibit. But if the prohibition should in terms go only to the sale of intoxicating malt liquors, *there would be left open such opportunities for invasions* (evasions) *of the law and there would arise such difficulties of proof as that the law could not be effectively executed;* and the lawmakers having the undoubted power to prohibit and to prevent the sale of intoxicating malt liquors, and to enact to that end a law which can be executed so as to secure it, *and, finding that this cannot be accomplished without extending the prohibition to all malt liquors,*

*whether intoxicating or not, such extension, necessary to prevent the sale of intoxicants, is as essentially the proper exercise of the police power as the inhibition with reference to intoxicants."* (Italics ours.) See, also, the following cases: *Dinkins v. State,* 149 Ala. 49, 43 South. 114; *Lambie v. State,* 151 Ala. 86, 44 South. 51; *Marks v. State,* 159 Ala. 71, 48 South. 864; *Eaves' Case,* 113 Ga. 749, 39 S. E. 318; *O'Connell's Case,* 99 Me. 61, 58 Atl. 59. On the authority of the cases cited above, and for the reasons that we have stated, without hesitancy we reach the conclusion that the passage of the act in question is entirely within legislative competency, and not opposed to any of the rights of the citizen guaranteed by the Constitution.

The question of the repeal of the act here under consideration by the subsequent act, approved November 23, 1907 (Gen. Acts Sp. Sess. 1907, p. 71), commonly known as the "State-Wide Prohibition Law," is also raised on the record; but we think that this point is not very seriously contended for in argument. The latter act contains a general provision of repeal of all laws and parts of laws in conflict with it, but no express repeal of the former act. That the act under consideration covers matters not covered by the state-wide prohibition law is plainly to be seen, and hence the two acts have different fields of operation and may consistently stand together, and without any conflict operate in harmonious conjunction to the accomplishment of the same general purpose.

Many of the questions reserved on the introduction of evidence and on the refusal of written charges requested by the defendant, and here presented on the record for our consideration, require no further discussion by us in detail, as the same can find an answer and ready solution in an application of the principles we have already stated above.

Dr. B. B. Ross, professor of chemistry of the Polytechnic Institute at Auburn, and ex officio state chemist, was examined as an expert witness in the case. Two bottles that were shown to have been sold by the defendant, one containing a liquid called "Mead," and the other a liquid called "Schlitz-Fizz," were analyzed by Dr. Ross. This witness testified that the liquid called "Mead," as shown by his analysis, contained quantitatively 1.27 per centum of maltose, and that the liquid called "Schlitz-Fizz" contained 2.89 per centum of maltose. He further testified that 95 per centum, or more, of the liquids, as a whole, was water, and that the same together with the maltose and other ingredients, constituted the mixture a beverage. This witness also testified that the ingredient of maltose gave to it a sweetish taste and also a nutritive element. He further testified that, relatively speaking, maltose as a ingredient, compared with the whole, was small, but, when compared with the other ingredients going to constitute the drink a beverage, it was very large.

On this undisputed evidence, it certainly could not be said that maltose, as an ingredient in the makeup of the beverage, was not a substantial ingredient, within the meaning of the statute. On the examination of this witness as an expert it was entirely competent to show by him the nature and character of maltose, its taste, potency, and activity, as an ingredient of the beverage, as well as the other ingredients, and their nature, kind, and character, entering into said liquids examined and analyzed by him. We fail to discover that the trial court committed any reversible error in the admission of evidence on the examination of this witness.

A number of the charges refused to the defendant find substantial duplication in charges given at the request of the defendant, and hence no error was committed in the refusal of such charges.

We have examined the written charges refused to the defendant, and that are here insisted on in brief and in argument by counsel for appellant. As above stated, the questions raised by these charges are covered by the principles that we have already laid down, and in their refusal no reversible error has been committed.

Finding no error in the record of which the appellant can complain, the judgment appealed from is affirmed.

Affirmed.

DENSON and McCLELLAN, JJ., concur

SIMPSON, J.—(concurring).—It is very difficult to draw the line, by a distinct definition, as to what the Legislature may do on the subject of prohibiting the sale or otherwise disposing of spirituous, vinous, or malt liquors or beverages. I take it to be an acknowledged principle that the citizen's right to property is protected by the Constitution, and that the right of property carries with it the right to sell or dispose of it. At the same time it is recognized that, on account of the injury and danger to the public, the Legislature has the right to prohibit absolutely the sale of all intoxicating beverages. I am of the opinion, also, that as a concomitant of this right a reasonable discretion must be lodged in the Legislature to pass all laws which are reasonably necessary to prevent the evasion of its laws on that subject. A careful author says: "It has occasionally been argued that the Legislature has no power to declare that to be intoxicating which is not so; that the use of any beverage which is not capable of producing intoxication can have no possible influence upon the public health, safety, or morals; and that, therefore, if the Legislature should attempt to include any such innocent article in its prohibition, the statute would be to that extent invalid. It is probable that the courts would

[Elder v. The State.]

accede to this reasoning in a very strong case, a case where there could be no possible doubt as to the innocent nature of the liquor in question; but they are disposed to leave much to the legislative judgment and discretion, and act with caution in taking judicial notice of the properties of such articles."—Black on Intoxicating Liquors, § 43.

I think, therefore, that the Legislature has the right to select such beverages as are recognized as convenient vehicles for the evasion of the prohibition laws, and to exercise a reasonable discretion in prohibiting the sale, etc., of such; and I cannot say that in this case the Legislature has gone beyond the bounds of its legislative discretion. This disposes of all questions raised by the pleadings and record in this case.

Therefore I confer in the conclusion of the opinion of the Chief Justice.

ANDERSON, J.—(dissenting.)—To my mind the conclusion of the majority of the court is not only far-reaching, but most dangerous in its results, and is directly in the teeth of the Constitution. The property right of every citizen is protected by both the federal and state Constitutions, and the right to dispose of property is essential to the enjoyment of same. The majority do not pretend, as I understand them, that the drinks involved in the case at bar are calculated to produce intoxication, or will, per se, have any influence upon the public health or morals, except in so far as they may be used as a means for evading the prohibition laws. They therefore base their holding that the Legislature has the right to prohibit these harmless drinks solely and entirely upon the idea that the dealing in same will afford a means to sell prohibited drinks in disguise. I cannot understand why they can be so used, unless it be that

[Elder v. The State.]

they may resemble certain intoxicating drinks which might be sold in the name of these nonintoxicating drinks, and which would be a violation of the law, regardless of the name under which they are sold. Iced tea resembles malt drinks as well as whisky diluted as also do ginger ale, cider, and many other harmless beverages or drinks; yet, under the holding of the majority, the Legislature can prohibit the sale of these harmless drinks simply because they may resemble certain intoxicating liquors.

These drastic prohibitory laws are doubtless intended for the moral benefit and elevation of mankind; but their moral purpose or beneficent results must not be considered, to save them, when they invade the sanctity of the constitutional rights of our citizens. Reforms come and go, often doing good; but occasionally they merely disturb and interfere with the serenity of conservatism and quietude under existing conditions. But Constitutions should ever remain as barriers to legislative or judicial interference with the inalienable right of enjoyment of life, liberty, and the pursuit of happiness, which includes the right to own and dispose of property, so long as it does not, per se, interfere with the public morals or health.

These views are concurred in by Justices MAYFIELD and SAYRE.

## On Rehearing.

SIMPSON, J.—As the title of the act in question covers only those beverages which are "the product of maltose or gencose," I think that portion of the act which prohibits the sale of beverages "in which maltose or gencose is a substantial ingredient" is not included in the title, and is therefore invalid under section 45 of the Constitution.

[Elder v. The State.]

The word "produce" is from "pro" (before) and "duco" (to lead), and means "to be the cause of." "Product" is "anything obtained as a result * * * and anything produced." "The result obtained by multiplication, as 24 is the product of 6 multiplied by four." Standard Dictionary, and Webster's International. "The word 'product' imports an article which is made of something, and which, when made, has characteristics which are apparent to the senses."—6 Words & Phrases, p. 5655.

Ingredient, from in (in) and gradi (to walk): "That which enters into a compound, or is a component part of any combination and mixture; an element; a constituent." Webster's International Dictionary.

Substantial means "belonging to substance; actually existing; real; * * * not seeming or imaginary; not illusive; real; solid; true; veritable." Webster's International Dictionary.

I therefore concur in the granting of the rehearing, and in the reversal of the case.

Justices ANDERSON, MAYFIELD, and SAYRE concur in the granting of the rehearing and in the reversal of the case, for the reasons set out in their original dissenting opinion.

SIMPSON, ANDERSON, MAYFIELD and SAYRE, JJ., concur.

DOWDELL, C. J., and DENSON and McCLELLAN, JJ., dissent.