Killits, J.
The defendant was tried by the court upon an affidavit charging him with the sale of a glass of intoxicating liquor in violation of the county local option law. The evidence of the sale of a beverage in taste, smell and effervescence somewhat resembling lager beer was direct; testimony of its character consisted largely of defendant’s admissions, and defendant went on the stand in his own behalf and testified that he made the liquor by mingling a malt preparation with hop syrup. From his testimony it is plain that a substantial and fundamental element of the beverage was malt liquor, and, in the opinion of the court, when it is shown that an indispensable and material part of the beverage is made from malt, this fact satisfies the'law and justifies the appellation of a malt liquor, and accordingly it is our opinion that the drink sold by defendant in this case was such. No attempt was made by the state to show that the liquor was intoxicating, and the only testimony we have upon this subject *498 is that of the defendant who said that in.its preparation he first made a malt liquor out of which he extracted the alcohol by boiling, and that, when he got ready to dispense it as a beverage, he mixed it with a syrup of hops and sugar and immediately put it on tap; that at first it developed alcohol very slowly, reaching a percentage for the first twenty to thirty hour's after mixing, according to the state of the weather, of about five-tenths of 1 per cent, of the drug, but that thereafter it would begin to sour and develop alcohol rapidly and hecome unpalatable. He protested that he sold it only when first made and exclusively to be drank upon the premises.
The evidence demands that the court treat this article as a non-intoxicating malt liquor, and the question is squarely before us whether the sale or furnishing of such a beverage is within the county local option law.
This proposition turns upon the interpretation of Section 3 of the act of March 3, 1908 (99 O. L., 36), which reads:
“The phrase ‘intoxicating liquor’ as used in this act shall be construed to mean any distilled, malt, vinous or any intoxicating liquor whatever.”
It would seem that if the statute had attempted to prohibit, by express terms, the sale of distilled, malt, vinous or any intoxicating liquor, the obvious method of construing the meaning of such an expression would be as if it should read: distilled liquors, malt liquors, vinous liquors, or any intoxicating liquor; and the Supreme Court, in State v. Kauffman, 68 Ohio St., 635, so construed the old Dow law, holding that the terms of Section 1 of the act of February 20, 1896 (92 O. L., 34), imposing a tax upon the business of “trafficking in spirituous, vinous, malt, or any intoxicating liquors,” required the person dispensing á non-intoxicating malt liquor to pay the tax. In the Aiken law, 98 O. L., 99, raising the tax to $1,000, the language of this section was changed, so that it now imposes the tax upon the business of trafficking in “spirituous, vinous, malt or other intoxicating liquors,! ’ and the Guernsey county circuit court has recently held that such a change in the language works a release of the obligation, contained in the old statute, to pay a tax on the dealing in *499 non-intóxicating drinks. Murray v. LaFollette, 12 C. C. — N. S., 113.
It would seem plain that the change in the language referred to warrants the construction of the Aiken law which the court in question arrived at, but that decision but emphasizes the necessity of construing the language of the Dow law as the Supreme Court interpreted it. In State v. Kauffman, supra, it was earnestly argued that the title of the act, which was to provide ‘ ‘ against the evils resulting from the traffic in intoxicating liquors,” should be considered as limiting the meaning of the words of description to intoxicating liquors of the several origins, but the Supreme Court held that the language of the statute was equivalent to imposing a tax upon the business of trafficking in intoxicating liquors and also upon the traffic in spirituous, vinous, and malt liquors, and that the term "malt liquors,” was a generic term, including both intoxicating and non-intoxicating beverages. We are unable to see that the change in the phraseology in the Rose law, in attempting to define the meaning of the expression "intoxicating liquors, ’ ’ permits any different construction than that reached by the Supreme Court in State v. Kauffman, supra, and hence we say that the section now before us attempts to, and does, say that the term "intoxicating liquor” shall be held to include and mean any malt liquor, without reference to its intoxicating power, leaving, for further consideration in this opinion, the question of the validity of the application of such a definition-in a case of this kind and the ability of the Legislature to make such a law.
A number of cases have been decided covering this question, and with practical unanimity, upon a variety of circumstances both of statute and fact; they hold that it is within the police power of the state to make it an offense to sell any liquor which may be of such a character as to render easy fraud and evasion of the statutes touching the sale of intoxicating liquor. Some of these cases only will we notice. In Hewitt v. People, 186 Ill., 336, the court says:
"That the Legislature defined a dramshop, and selected spirituous,. vinous and-malt liquors, and branded them as intoxica *500 ting without proof of their intoxicating character; that they authorized a license to keep a dramshop and sell intoxicating, malt, vinous, mixed, or fermented liquor, and provided that without such license the sale of any intoxicating liquor should constitute an offense, and subject the offender to punishment.
“Under the statute it is sufficient to prove that a defendant sold spirituous, vinous, or malt liquor, without proving their intoxicating quality.”
In the case of United States v. Cohn, 2 Ind. Ter., 474, the court had before it the duty of interpreting a federal statute which forbade the sale within the territory of “any vinous, malt or fermented liquors, or any intoxicating drinks of any kind whatsoever,” language which is not substantially different from that before us in our county option law. The article sold was a malt preparation known as Rochester Tonic, and it was conceded to be non-intoxicating, unless taken in quantities exceeding the capacity of human consumption. The opinion at length discusses the right of states, in the exercise of their police powers, to prohibit the sale of such beverages, and decides that whatever the states may do in that behalf Congress may do for the territories, and, after quoting the statute at length, proceeds:
“No one can carefully read this statute but that he will be impressed with the idea that Congress, whatever it omitted to do, intended to completely cover the whole case, and to erect a complete and impregnable barrier against the introduction, sale, and use of intoxicating liquor in all of its forms, and to guard against all of the well-known subterfuges resorted to to deceive courts and juries in relation to the matter. * * *
“It will be seen that the only kinds of liquors specifically named by the statute are vinous, malt, and fermented liquors. If it were intended that only such of these, as could be shown to be intoxicating should be included, why name them at all ? Why not simply say that all intoxicating liquors and drinks should be prohibited, or whiskey, brandy, rums, wines and all other intoxicating drinks? The more common use of language in such cases is to hame the pronounced articles first, and then follow them with the general clause, and thus emphasize that which is intended. Whiskey, brandy, rum, and wines are all intoxicating per se. Therefore name them, and then all that it may be necessary to prove intoxicating naturally come under the general elause ‘ all other intoxicating drinks. ’ But here those more *501 intense intoxicants are not named at all, bnt vinous, malt and fermented liquors are. Congress evidently had some purpose in thus changing the ordinary and common use of language. ’ ’
It is therefore concluded by the court that the prohibition of the sale of malt liquor, without reference to its intoxicating qualities, was not an unreasonable exercise of the police power.
In State v. Frederickson, 101 Me., 37, the question was whether keeping a place where fresh eider was offered for sale was indictable under the law of that state, which contains this definition:
“Wine, ale, porter, strong beer, lager beer or other malt liquors and cider, when kept or deposited with intent to sell the same for tippling purposes, or as a beverage, as well as- distilled spirits, are declared intoxicating within the meaning of this chapter. ’ ’
The court says :
“The liquors above enumerated are declared intoxicating by law.
‘ ‘ In determining whether or not a liquor is to be regarded as intoxicating under this enumeration, it is entirely immaterial whether it is intoxicating in fact. As was well said in State v. O’Connell: ‘ It is not for the jury to revise the judgment of the Legislature and determine whether or not liquor is or is not intoxicating.’ When it appears that a liquor comes within the scope of the forbidden enumeration that moment its intoxicating character becomes fixed by law, and its non-intoxicating character, as a matter of fact, becomes entirely immaterial with respect to the application of the statute. Commonwealth v. Blos, 116 Mass., 56; Commonwealth v. Anthes, 78 Mass., 29; Commonwealth v. Brelsford, 161 Mass., 61; State v. Piche, 98 Me., 348; State v. O’Connell, 99 Me., 61; Commonwealth v. Snow, 133 Mass., 575; State v. Intoxicating Liquors, 76 Iowa, 243; State v. Guinness, 16 R. I., 401.”
And proceeding to consider defendant’s proposition that the law was in contravention to the Fourteenth Amendment to the federal Constitution, the court says:
“Here two questions must be considered: First whether this provision of the Federal Constitution is violated by a state law regulating or prohibiting the sale, and keeping for sale, of intoxicating liquors, and second, whether it is violated by a state law declaring certain liquors- intoxicating, within the meaning *502 of the law governing intoxicating liquors, irrespective of the intoxicating character of such liquors, as a matter of fact. The answer to both of these questions is that a state law regulating or prohibiting the selling, or keeping for sale of intoxicating liquors is a legal exercise of police power, and is not in contravention of the Fourth Amendment to the Federal Constitution. This has been repeatedly held, and can be no longer an open question.” Citing nuriierous decisions by the Supreme Court of the United States.
In the case of Feibelman v. State, 130 Ala., 122, approved by the recent ease of Dinkins v. State, 149 Ala., 49, the defendant was convicted under a statute which made it an offense to sell spirituous, vinous, or malt liquors, or intoxicating liquors or beverages within three miles of. a certain- church. The proof showed that the article sold was a non-intoxicating malt liquor called “Iiop Jack.” The Supreme Court of Alabama, reviewing the overruling by the trial court of the motion to exclude the evidence, said:
“We may, for all the purposes of this case, concede, without indicating any opinion upon the question, that the Legislature may not, in the exercise of police power, prohibit the sale of malt liquor which is not intoxicating nor otherwise deleterious in any way, where the sole purpose and object is the prevention of the sale of that particular character or quality of malt liquor. But it is common knowledge that most malt liquors are intoxicating and harmful when used excessively, and are capable of excessive use as a beverage. The sale of all such, of course, the Legislature-has the power to prohibit. But, if the prohibition should go only to the sale of ntoxicating malt liquors, there would be left open such opportunities for evasions and. there would arise such difficulties of proof as the law could not be effectively executed; .and the lawmakers having the undoubted power to prohibit and prevent the sale of intoxicating malt liquors, and to enact to that end a law which can be executed so as to secure it, and finding that this can not be accomplished without extending the prohibition to all malt liquors, whether intoxicating or not,' such extension, necessary to prevent the sale of intoxicants, is as essentially the proper exercise of the police power as the inhibition with reference to intoxicants.”
Many other cases may be found, some of which have been cited to the court in argument, but it is not necessary to lengthen *503 this opinion by considering them. It is sufficient to say that the unopposed current of judicial opinion, as expressed by the highest courts of many states, is that the Legislature has the power to define- what sort of liquors shall be deemed intoxicating for the purpose of administering laws to restrain the evils flowing from the use of intoxicating drinks, and that the naming of any particular liquor in the statute as belonging to the category relieves the state of the necessity of proving its intoxicating character in fact. That this stand of the court is not a development of the present high wave of public opinion against the traffic, but has long been the law and was declared to be so long before prohibition and repressive restrictions became favorites of legislation generally, is shown by the fact that forty years- ago, in the case of State v. Wadsworth, 30 Conn., 55, it was held that because the statute of that state named ale in a list‘of statutorily defined intoxicating liquors, proof of the sale of ale, without special proof of its intoxicating character, sufficed in a prosecution for illegal trafficking. The cases we have quoted from teem with citations of authority, to which those unsatisfied with our position in this ease are referred. A prolonged consideration of many cases convinces us that no authority is in real conflict with this position and that those decisions which, at first look, appear to be in conflict, are really not so, but depend upon either their particular facts or upon some idiosyncrasy of language in the statute, as- may be exemplified in the case cited from Guernsey circuit court, Murray v. LaFollete, supra, which can not be said to conflict with or be inconsistent-with State v. Kauffman, supra.
It being conceded that, under their police power, states may regulate to the extent of prohibiting the traffic in intoxicating drinks, it is a logical and necessary corollary to that power that they may pass such laws as are obviously necessary to make that power effective, and to prevent evasions and deceits, even if, in so doing, they may prohibit indulgences that are by themselves harmless. In the case before us, conceding that the business, as the defendant claims to have carried it on, was harmless-, because he sold only before alcohol in more than trifling prop or *504 tions developed in the liquid and because he required it to be drank on the premises, yet to permit the business to be continued means to afford wide opportunity to evade the law and to bring the legislation into derision, and to devolve upon the officers charged with its execution great and overwhelming burdens, for, if he may sell this drink others not so scrupulous as he professes to be may also, and the work of officers having the execution of the law before them may consist largely in weighing the characters and dispositions of the vendors when there is brought before them the fact that liquors having the superficial characteristics of intoxicants are being vended or furnished. It is not feasible to expect the law to draw the line anywhere else than to the point where it may be most easily executed, and that point, in cases of this character, is obviously where opportunities for evasions and deceits are least possible. The court is bound to uphold legislation designed to secure that advantage in favor of good order and sobriety. Our conclusion, therefore, is that the liquor in question was a malt liquor, and that its sale is prohibited by the act, whether actually intoxicating or not, and that, under the definition in the act, it was rightfully denominated in the affidavit intoxicating liquor, and that, upon all the facts before us, the defendant must be considered guilty of a violation of the local option law as it is in force in Fulton county. We might add, further, for the information of the defendant, and as a suggestion for his future course in business, that the conclusion we reach is not based upon the fact that his product, as sold in this instance, was not stable in its alcoholic content, but that the judgment of the court is confined to the fact that the liquor contained, as one fundamental and principal ingredient, diluted extract of malt. The fact that it might develop more and more alcohol from time to time only made the sale more inadvisable, without adding to its unlawfulness.
In the view the court takes of the Rose law, to which we are forced by these numerous authorities, the sale as a beverage of any liquor, made in any material degree by extracting the principles of grain through the process of malting, is against the law, even thought by the use of acid, or through any process, the formation of alcohol therein is arrested and prevented.