Price, J.
This is one of the many cases which have reached this court, involving alleged violation of some provision of the county local option law. The act is designated in the statute as amended senate bill No. 345, and is entitled: “An act to provide against the evils resulting from the traffic in intoxicating- liquors, by providing for local option in counties,” and was passed March 5, 1908, to take effect and be in force on and after September 1, 1908. See 99 O. L., 35. It is regarded as a case of great importance by the prosecuting attorneys of at least fifteen counties of the state who join in the brief for plaintiff in. error.
The charge preferred against defendant in error *79 is that, “on the 25th day of January, 1909, in the county of Fulton and state of Ohio, one August Walder did then and there sell intoxicating liquors, to-wit, a malt liquor containing .49 per cent, alcohol and no more, commonly known as ‘Near Beer/ as a beverage to one Fred Grandy; that the selling of said liquor as aforesaid by the said August Walder was then and there prohibited and unlawful and contrary to. the local option laws of the general assembly,” etc. The charge in full is found in our statement of the case.
We are not clearly advised as to the author of the name of “Near Beer,” nor as to its real significance, but it may mean next to or almost “beer.” While the affidavit charges that the “Near Beer” so sold to Grandy was an intoxicating liquor, to-wit, a malt liquor of .49 per cent, alcohol, it was found by the trial court where the evidence was heard and' considered, “that the liquor charged in the affidavit to have been sold by defendant was a malt liquor, but not intoxicating” and then found as a matter of law that the sale of said malt liquor is “within the inhibition of statute and contrary to law.”
The statute authorizing a local option election provided how the question should be stated on the ballots, and it was in substance whether the sale of “intoxicating liquors” as a beverage should or should not be prohibited: And when the májority of the votes cast at the election were in favor of prohibiting the sale of intoxicating liquors in thát county, Section 2 of the act referred to made it unlawful, from and' after the holding of the elec *80 tion, “for any person personally or by agent, within the limits of such county, to sell, furnish or give away intoxicating liquors to be used as a beverage.”
Therefore, the sole living question in the case is,'did Walder violate the provisions of the statute by selling a malt liquor that was not in fact intoxicating? Or, was it essential to a conviction that the malt liquor sold was intoxicating?
The accused testified in his own behalf and he undertook to give the elements composing and the method of brewing the liquor from which the sale was made. His statement is brief, and we quote from it.
“Ques. to Deft. Tell the court whether or not you sold Mr. Grandy beer as he testified to? Ans. I did: it isn’t beer — near beer. At the time Mr. Grandy purchased that beer we were making near beer on a — that is, practically it wasn’t intoxicating at all; of course the beer was made, the first beer that was all made similar only far weaker than the other beer. The other beer contains four to five per cent, alcohol. We made it as weak as we could and then we boiled out the alcohol so it didn’t contain any alcohol whatever.
“Ques. This near beer you sold to Grandy? Ans. Yes, sir; then the raw product, sugar, etc., and we made nothing but a syrup. These articles laid there till we got ready to use them, when we would put in one-third of the first.substance, which didn’t contain any alcohol whatever, and then we took two-thirds of the other stuff which contained mostly water, and then we put them together, you *81 know, and carbonated it; carbonating is what forms the foam and gives it the life; but of course there is a natural limit to that — it might be thirty hours and it might be ten hours — it depends on what kind of shape you keep it — if you keep it in a warm place it would generate alcohol right away; where if you keep it cold it might go two weeks or three weeks, as far as that is concerned, and never get alcohol. That is the reason I didn’t ship any or sell any except in my own place.”
He was asked to tell what ingredients entered into the beer sold to Grandy, and he said: “It was made out of that sugar — of course it had that malt ingredient; part of the malt was in there, but the alcohol part had all boiled out — there is nothing but' the nutritious part of the malt * *
Another question: “Was there any alcohol in the beer you sold Fred? (Grandy). Ans. I suppose it had generated a little, but I don’t think at the time I sold it — I don’t think there was probably two-tenths of one per cent. — may be not that much * *
On cross-examination, he admits the malt ingredient, and in another part of his testimony, he states that hops are used in lager beer, while in the near beer hop .extract is used, that is nonalcoholic but is the same thing as hops.
Again he is asked: “This brew that you sold that day would become intoxicating if left standing there? Ans. ' Yes, if I had sold' it to somebody else, or let it go out of the place; but I don’t allow it to go in a can or pail anywhere, so I was sure it wouldn’t get intoxicating * *
*82 The purchaser of this article called “Near Beer” testified that it foamed like beer — looked like beer except that it was a little lighter — and smelled like beer. He also testified that Walder told him “he had a brew of malt the same as they would for beer, and that the liquid was boiled until they boiled the alcohol out of it * * He said it was made from malt the same as they made their beer.
It appears from the above and other evidence, that the trial court is fully supported in its finding that the beverage sold was a malt liquor, and it might also have been found that if given time or moderate warmth, it would generate alcohol. For this reason the accused would not sell the beverage to be taken from his premises.
What is the law applicable to the finding and the facts?
Section 3 of the county local option statute, already referred to, provides: “The phrase 'intoxicating liquor’ as used in this act shall be construed to mean any distilled, malt, vinous or any intoxicating liquor whatever.” While this section of the above statute has not heretofore been before this court for construction, we borrow light from what has been said in construing certain provisions of the Dow law and of the later Aikin law, concerning the taxing of the traffic in intoxicating liquors. In State, ex rel. Guilbert, Auditor, v. Kauffman, 68 Ohio St., 635, a dealer in “Bishop’s Beer” was resisting the payment of what was commonly called the Dow tax, because such beer was not intoxicating and did not come within the pur *83 view of the taxing statute. This court held in the syllabus that, “Section 4364-9, Revised Statutes, applies to the business of selling a malt liquor or beverage which contains less than two per cent, of alcohol and is not intoxicating.” The court disposed of the question in the following per curiam: “Section 4364-9, Revised Statutes, imposes a tax oh the business of trafficking in any intoxicating liquors, and also on the business of trafficking in spirituous, vinous or malt liquors. The generic term ‘malt liquors’ includes both non-intoxicating and intoxicating malt liquors * *
The statute then before the court was Section 4364-9, Revised Statutes, which provides that, “upon the business of trafficking in spirituous, vinous, malt, or other intoxicating liquors, there shall be assessed yearly and shall be paid into the county treasury * * * the sum of * * . This wording is the same as contained in the prior statute on the subject, except that the word “any” in the former is supplanted by the word “other” in the statute in force when the above Kauffman case was decided.
In a later case, La Follette, Treasurer, v. Murray, 81 Ohio St., 474, this court considered the section (4364-9) which is worded as above quoted, viz: “upon the business of trafficking in spirituous, vinous, malt or other intoxicating liquors, there shall be assessed,” etc. The case was not one of “Near Beef” but of “Friedon Beer,” containing .47 of one per cent, of alcohol, which it was claimed was hot intoxicating. The statute? 'and former decisions were reviewed, and the court’s conclusion *84 is stated in the following syllabus: “Section 4364-9, Revised Statutes, (98 O. L., 100) in effect April 10, 1906, applies to the business of trafficking in malt liquors, whether intoxicating or nonintoxicating.”
The legislature went further, in order to make clear its -meaning, and made a definition of the phrase “trafficking' in intoxicating liquors,” which is found in Section 4364-16, Revised Statutes. And we find that in the statute providing for municipal local option, the legislature, in Section 4364-20c, Revised Statutes, defines the phrase “intoxicating liquors” as used in this act shall be construed to mean any distilled, malt, vinous, or any other intoxicating liquors.
Now as we come to the county local option law, we find the legislature attempting to -silence all quibbles as to what the phrase “intoxicating liquor” means, enacting Section 3 of that act, which may again be quoted: “The phrase ‘intoxicating liquor’ as used in this act shall be construed to mean any distilled, malt, vinous, or any intoxicating liquor whatever.”
This definition is very clear, and is not vexed with the word “any” or “other” which gave rise to the legal controversies in construing the taxing statutes.
The legislature -may have heard of “Bishop’s Beer,” “Friedon Beer,” and later of “Near Beer,” and concluded that the enforcement of the will of the majority should not be defeated by subterfuge, or the juggling in percentages of alcohol, and has said that, for the purpose of carrying out the in *85 tention of the people to prohibit the sale of intoxicating liquors, certain beverages shall be legally considered intoxicating, although not so in fact; and malt liquor is one of those so designated. “Near Beer,” being a malt liquor, the statute pronounces it an intoxicating liquor, and made proof of its real intoxicating qualities unnecessary. It is no more protected than altogether beer, and the attempt to evade the law by brewing a near or almost beer, is by section 3, supra, rendered futile:
The legislative fiat has gone forth, that malt liquor is intoxicating within the meaning of the act, and that is the end of it.
If the law is wrong, it is for the legislatuie and not the court to correct it, but it was enacted no doubt to cover such evasions as have been, tried in many localities.
However, this feature of legislation is not singular. it has been indulged in many other cases and on various subjects. We have seen how trafficking in intoxicating liquors is defined. We mention some other exemplifications of such legislation. Section 4200-5, Revised Statutes, defines the word “drug,” and also what shall be considered .as “food.” The following section determines when “drugs” and when “food” shall be deemed adulterated. Section 4403/, Revised Statutes, provides : “Any person shall be regarded as practicing medicine or surgery or midwifery within the meaning of this act, who shall use the words or letters, ‘Dr./ ‘Doctor/ ‘Professor.’ ‘M. D.,’ ‘M. B./ or any other title,” etc. Section 4364-30g defines “intoxicating liquor,” “qualified elector,” “residence dis *86 trict;” defines the words “block” and “saloon.” Section 4364-30y makes certain facts prima fácie evidence of guilt, and Section 4387 defines' a “pawnbroker.” Many other illustrations may be found to show how fertile the legislature has been in settling some things by statute which might otherwise be difficult of proof.
The courts of other states have passed on similar legislation, and we select a few decisions from the great number of reported cases.
: In State of Maine v. Frederickson, 101 Me., 37, the supreme judicial court of that state held in the third section of the syllabus as follows: “The constitutional right of the legislature to regulate or prohibit the sale and keeping of intoxicating liquors, and to declare certain liquors intoxicating within the meaning of the law governing intoxicating liquors irrespective of the intoxicating character of such liquors as a matter of fact,-both under the state and federal constitutions, have been so universally answered in the affirmative, both by the decisions in our own state, and by the supreme court of the United States, that it is no longer a question for argument or even doubt..”
Luther v. State of Nebraska, 20 L. R. A., 1146, decides that the prohibition of the sale or keeping for the purpose of sale, of malt liquors without a license so to do, applies to all malt liquors, sold or kept for sale to be used as a beverage, whether intoxicating or not; and that it was not necessary to allege or prove that the malt liquor was in fact intoxicating. This case was decided in 1909.
To the same effect is Eaves v. The State, 113 *87 Ga., 749. In Dinkins v. State, 43 So. Rep., 114, the supreme court of Alabama held that “under acts 1886-87, p. 665, prohibiting the sale of malt liquors, it is an offense to sell a fluid containing a weak solution of malt liquor which cannot intoxicate.” It seems that in that state (Alabama) the courts were called upon to investigate the sale of various beverages which appeared under such enticing names as “Hop Jack,” “Cherry Bitters,” “Harter’s Wildcherry Tonic,” and “Cook’s Malt Tonic.” There, as in other states, enterprise was unbounded to prepare something to slake thirst for some, even slight intoxicant, without being caught in the meshes of law. The above case reviewed Feibelman v. State, 130 Ala., 122, to which we merely refer without quotation. See also State of Missouri v. Wittmar, 12 Mo., 407. A case is found in Commonwealth v. Timothy, 8 Gray, 480, in which it is held: “If the liquor sold was not in fact intoxicating, still, if it was within the liquors enumerated in the first section of the statute, the keeping of it with intent to sell was, by the terms of the statute, to be punished in the same mariner as if it was intoxicating; and such an enactment is within the discretion of the legislature to pass.”
Similar doctrine is laid down in The State v. Certain Intoxicating Liquors et al., 76 Ia., 243. The case is directly in point.
We cite nothing further from the great array of authorities, some of which may be found in the brief for plaintiff in error.
The finding that the sale made which is now under consideration, was a sale of malt liquor is *88 amply supported by the facts, and the statute declares malt liquor to be intoxicating within the meaning of,the act.
The circuit court erred in its judgment, which is now reversed, and the judgment of the court of. common pleas is affirmed.

Judgment reversed.

Summers, C. J., Crew, Spear and Davis, JJ., concur.
Shauck, J., dissents.