State of Georgia *vs.* Jones.

No. 69.—THE STATE OF GEORGIA, plaintiff in error, *vs.* WILLIAM JONES, defendant in error.

[1.] A writ of error does not lie to this Court, in a criminal case, at the instance of the State.

This writ of error was sued out to review a decision of Judge WRIGHT, ordering an indictment quashed against the defendant, who was charged, in Lumpkin Superior Court, with the offence of false imprisonment. A motion was made to dismiss the writ in this Court, on the ground, that under the Act organizing this Court, a writ of error does not lie at the instance of the State to review a decision in favor of the defendant.

J. W. H. UNDERWOOD, for the motion.

C. PEEPLES, representing WORD, Solicitor General, contra.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] A motion was made in the Court below to quash the indictment, which was sustained, and upon that judgment, the State brought this writ of error. A motion is now made before us to dismiss the writ, upon the ground that the State cannot, in a crim-

State of Georgia *vs.* Jones.

inal case, bring a writ of error to this Court.   We sustain the motion, and the writ is dismissed.   The effect of a judgment to quash, is to annul the indictment, and is founded upon such defect therein, as would make it impossible to execute judgment in the case.   An order to quash is therefore a final disposition of the cause.   The question here seems to be resolvable into three inquiries.

1. Whether, upon general principles, the State is entitled to a review in any form of alleged errors in criminal cases ?

2. Whether the Constitution of the United States has any bearing upon the question ? and,

3. Whether the Act of our own Legislature, organizing this Court, has granted to the State the right of being heard upon a writ of error in criminal cases ?

The Common Law writ of error removes nothing for examination but the question of law, upon which error is assigned.   It removes no facts.   That is, no new inquiry can be instituted upon it as to the facts.   Yet, the corrective Court takes, is obliged to take cognizance of the facts as they appear upon the record, and pronounces the law arising upon the facts.   By our own Act, the jurisdiction of this Court is limited to questions of law.   *Story's Com. on the Const.* 3 *vol.* §§1756, 1759.   3 *Dall.* 321.   6 *Wheat.* 409 *to* 412.   *Act of* 1845.

At Common Law, *this writ* is grantable *ex debito justitiæ,* to the subject, *in all cases,* except treason and felony.   2 *Salk.* 504. 3 *Durnf. & East,* 78.   9 *Price,* 606.   2 *Tidd,* 1134.   The right of new trial and to the writ of error, depend upon the same principles, as in case of reversal upon writ of error, a rehearing is generally awarded.   The subject in England is not entitled to a new trial in cases of treason and felony, when convicted, no matter what may have been the errors of the Court or of the Jury.   He is in all such cases turned over to the mercy of the Crown.   6 *Durnf. & East,* 638.   2 *Tidd,* 911.   13 *East,* 416, *n.* (*b*)   4 *Black. Com.* 362, *note* 33.   2 *Russell on Crimes,* 726.   8 *Wend.* 549. 2 *Sumner,* 19.

In this country a new trial will be granted to the prisoner, I apprehend, in *all cases,* when according to law, in any case, he may be entitled to it.   He is entitled to his bill of exceptions and writ of error by Statute in Georgia, as well in criminal as civil cases.   3 *Dallas,* 515, *United States vs. Fries.*   1 *Bay,* 372, *State*

*vs. Hopkins.* 17 *Mass.* 515, *Commonwealth vs. Rogers. Act of* 1845, *sec.* 4. 1 *Leigh's R.* 598. 1 *Blackf. R.* 399. *But see* 2 *Sum.* 19. The rule seems to be well settled in England, that in criminal cases a new trial is not grantable to the Crown after verdict of acquittal, even though the acquittal be founded on the misdirection of the Judge. This is the general rule, and obtains in the States of our Union. It excludes a rehearing after acquittal upon errors of law, and therefore, it would seem, denies also a rehearing upon judgments of the Court upon questions of law, even when the Jury have not passed upon the guilt or innocence of the prisoner. If the effect of the judgment is a discharge, there can be no rehearing, either by new trial or writ of error. Indeed it may be stated as a general rule, that in criminal cases, upon general principles, errors are not subject to revision at the instance of the State. 2 *Hawk. Pleas of the Crown,* 442. 4 *Black. Com.* 361, *note* 33, *by Chitty.* 2 *Tidd's Prac.* 911. 6 *East,* 315. 4 *M. & S.* 337. 1 *B. & Ald.* 63. 2 *Chitty's R.* 282, *S. C.* 1 *Chitty's R.* 352. 1 *Chitty's Crim. Law,* 658. 1 *Starkie N. P. R.* 516. 5 *B. & Ad.* 52. 2 *Russ. on Crimes,* 726. 6 *T. R.* 625. *Graham on New Trials,* 505, 506. 8 *Wend.* 549. 1 *Scam.* 257. 1 *Murphy,* 257. 5 *Litt.* 289. 2 *Yerg.* 360. 2 *Virg. Cas.* 202. 5 *Har. & Johns.* 317. 4 *Hayw.* 110. 2 *Sumn.* 19. An exception to this rule is stated to exist, when the acquittal of the defendant is effected through his fraud or misconduct. 1 *Chitty's Crim. Law,* 657.

These principles are founded upon that great fundamental rule of the Common Law. *Nemo debet bis vexari pro una et eadem causa;* which rule, for greater caution and in stricter vigilance over the rights of the citizen against the State, has been in substance embodied in the Constitution of the United States, thus : " Nor shall any person be subject for the same offence, to be twice put in jeopardy of life or limb." *Const. U. S. art.* 5, *Amendments of March* 4, 1789.

I do not mean to say, that if otherwise entitled to the writ of error, the State would in this case be precluded by the operation of this provision of the Constitution; for according to the most liberal construction of it, a defendant is protected from a second trial, only where, upon a good indictment, the Jury have been charged with the prisoner, and have been discharged without legal necessity—other constructions requiring that they shall be charged with the prisoner upon a sufficient indictment, and have delivered

State of Georgia *vs.* Jones

themselves of the charge by a verdict. I express ' no opinion on these points; it is not necessary that I should in this case. Under no construction of the Constitution has it any direct bearing upon this case, and to show that alone, have I referred to the constructions as above. In this case, the Jury were not charged with the trial, and the offence is only a misdemeanor. See to these points, *United States vs. Gilbret*, 2 *Sumn.* 19. *The People vs. Goodwin*, 18 *Johns. R.* 188 ; and 3 *Kelly*, 53, *where the authorities are reviewed.*

It may be said, too, that the rule of the Common Law, denying to the State a new trial, contemplates cases only where there has been a verdict of acquittal, and cannot apply to errors in law committed by the Court; whereas, here, there was no verdict. We have seen that a new trial will not be given in cases where the verdict is the result of the misdirection of the Court. Errors in Law, therefore, cannot be reached by a new trial at the instance of the State. But, farther, the Common Law maxim and the Constitution are founded in the *humanity* of the law, and in a jealous watchfulness over the rights of the citizen, when brought in unequal contest with the State. It is, doubtless, *in the spirit* of this benign rule of the Common Law, embodied in the Federal Constitution—a spirit of liberty and justice, tempered with mercy, that, in several of the States of this Union, in criminal causes a writ of error has been denied to the State.

The trial of a citizen for a violation of the Criminal Law, is a very different thing from the trial of civil rights between two citizens. The forms of procedure, and the principles upon which they proceed, are different. When the prosecution is upon information, the prosecutor is not to be viewed in the light of a party. He has no rights to be violated by denying the writ of error—he has no more interest in the administration of criminal justice than has every other citizen. The offence to be punished is against the people. The violation is of a public law—the object of the trial is not compensation or restitution, or the settlement of conflicting claims to property, but punishment if there is guilt. The punishment inures to the safety and peace of the whole body politic. If there is, by reason of the offence charged, an injury done, especially to any one person, he has a remedy for the wrong. In criminal trials, the State—the supreme authority—that authority which makes the law, and prescribes its

penalty, and executes its judgments—moves against the citizen. The Court, the Jury and the Solicitor General are its agents. The State is not a party—the State is rather an accuser—she charges crime, arrests, tries, convicts and executes. In criminal causes, the State, through her agents, is the judge who tries the accused. In civil cases, she stands aside and leaves the parties to litigate upon equal terms before a tribunal independent of both. Thus unequally do the State and the defendant enter upon an issue, the result of which may involve the liberty or life of the one, and no *sensible* consequence to the other. Viewed in this light, it is a concession in behalf of the defendant, both humane· and reasonable, that the *State* should not review her own errors— that she should decide but once. If it were not essentially, in all cases, just, yet it is still expedient. It is a salutary precaution in favor of the citizen against an abuse of the sovereign authority; for history teaches the melancholy truth, that however fenced and guarded, limited and defined, by laws or usages, it sometimes breaks over all these barriers, defies the sentiment of the world, and in the name of the law violates justice and outrages humanity. The reign of the Stuarts in England, illustrates these views: that *the State* will not, in this signally favored country, thus abuse its powers, is not only hoped but believed. Vigilant for right and liberty, we will not trust her, but hold her steadily to the just limitations within which the wisdom of other States and past generations have circumscribed her.

The Act of the Legislature organizing this Court, does not, in our judgment, authorize a criminal case to be reviewed by this Court by writ of error, at the instance of the State. It declares, " All causes of *a criminal* or civil nature may, for alleged error in any decision, sentence, judgment or decree of any such Superior Court, be carried up from the Counties of the respective districts aforesaid, to the Judges of the Supreme Court, at the respective terms thereof for such district, to be by said Supreme Court revised and determined." The language of this clause is held as conferring the right upon the State. It certainly asserts that all causes of a criminal nature may be carried up to the Supreme Court, but it does not declare by whom—it does not say by the State. If, however, it be conceded that it confers the right equally upon the State and the defendant, yet this generality of meaning is qualified by subsequent provisions, so as, by fair implication, to

State of Georgia vs. Jones.

limit the right to the defendant. In prescribing the manner in which decisions, &c. in criminal cases shall be taken up, *provision is made applicable to the defendant—none is made for the State, eo nomine, and that made for the defendant is not applicable to the State*. The inference from these facts is irresistible, that the law does not, in any of its provisions, contemplate the State, and that it leaves the State, in this regard, subject to the general law. For example, it declares that " any criminal cause may be carried up to the Supreme Court, on a bill of exceptions in writing, specifying the error or errors in law complained of, to be drawn up by *the party, his* counsel or attorney," &c. &c. If the view I have taken, that in a criminal cause the State cannot, in any just sense be considered a *party*, then the word *party* does not embrace the State, and applies alone to the defendant. The use of the personal pronoun *his*, indicates a person, to wit: the defendant. Neither in law language, nor in common parlance, is it usual to indicate *a State* by the use of a personal pronoun of the masculine gender. The limitation of the meaning of the word *party* to the defendant, is yet more clearly established by the way and the connection in which it is used, when the Act makes provision for recognizance. It declares, "and if in a criminal case, where the offence is by law bailable, the *party* complaining of error shall enter into recognizance, with security, &c. conditioned for the appearance, *in person*, of such *party* complaining, to abide the final order, judgment or sentence of said Court, and if the offence be not bailable, or if *the party* be sentenced to imprisonment in the Penitentiary," &c. &c. Clearly all this refers to the defendant. The State cannot appear *in person*, is not liable to sentence of *imprisonment*, or any other *sentence*, nor is she capable of any offence *bailable* or otherwise. These provisions are inapplicable to the State, and in them the State is not contemplated. Again, in requiring notice of the signing of the bill of exceptions to be given, in civil cases, the Act directs the notice to be given to *the adverse party* or his counsel—referring to *both* parties; but in criminal cases, the notice is directed to be given to *the attorney or Solicitor General*, who represents the State. Nothing any where is said about notice to the defendant in criminal cases, when the State brings the writ. This shows that the State was not expected to bring the writ. If it can, then the Legislature is justly chargeable with the culpable injustice of authorizing the State, in

criminal cases, to take a bill of exceptions without giving notice of its being signed. *Act of* 1845, §4. 1 *Kelly*, 6.

Let the motion be sustained, and the writ of error be dismissed.

NOTE.—A sudden bereavement in his family called Judge *Nisbet* home, so that he did not preside during the balance of this term.—[Rep.]