THE STATE, *ex rel.* JOHN M. TUCKER, plaintiff in error, **vs.** LAVINIA, a person of color, defendant in error.

THE STATE on the relation of JOHN M. TUCKER, plaintiff in error, vs. WILKES, a male slave, defendant in error.

[1.] A *certiorari* does not lie at the instance of the State to the Superior Courts, to obtain a rehearing in the Inferior Courts, against a slave, who has been acquitted for an alleged violation of the Acts of 1818, *Cobb* 992, or of 1835, *Cobb* 1008.

[2.] A writ of error does not lie to this Court, in a criminal case at the instance of the State.

*Certiorari*, from Baldwin county. Decided by Judge HARDEMAN, February Term, 1858.

The bills of exception in these two cases were filed under the following circumstances:

A warrant returnable to the Inferior Court was issued against a negro woman Lavinia, on the information of John M. Tucker, for residing in the State of Georgia without her name being inserted in the book of registry of free persons of color kept by the Clerk of the Inferior Court; enjoying the profit of her labor and not being in the employment of a master or owner, contrary to the 5th and 6th sections of the Act of 18th December, 1818, entitled " An Act supplementary to and more effectually to enforce an Act entitled ' an Act, prescribing the mode of manumitting slaves in this State.' "

Upon the hearing, the prosecutor introduced as a witness, *Tomlinson Hart*, who swore that the said Lavinia lived in a house not belonging to him, nor provided for her by him; that the said Lavinia belonged to him, but did not work for him, nor had she done so for ten or fifteen years, nor did she work for any white person by virtue of any contract for his benefit; witness gave her papers.

The case being closed and argued, the prosecutor asked the Court to let the witness explain how the slave came to pass away from his premises and live alone as a housekeeper, but the Court refused.

Prosecutor then moved the Court to declare the said Lavinia forfeited. The Court refused the motion and decided that the said Lavinia was the slave of Tomlinson Hart, and liable to his debts. From this decision the prosecutor appealed by *certiorari* to the Superior Court.

After argument, the Court dismissed the *certiorari*, on the ground, that the proceeding being criminal, and the defendant Lavinia having been acquitted by the Inferior Court, the Superior Court had no constitutional power to order a rehearing.

A warrant was also issued against Wilkes a male slave, on the information of John M. Tucker, for returning to the State of Georgia from the State of New York, a non-slaveholding State, since the passing, and in contravention of the 5th section of the statute 26th December, 1835, entitled "An Act to amend the several laws now in force, in relation to slaves and free persons of color."

Upon the hearing, the prosecutor proved by *Tomlinson Hart* that the slave Wilkes, the prisoner was in the States of New York, New Jersey, and Pennsylvania in 1853, and moved the Court to adjudge him forfeited according to the 5th section of the Act of 1835.

The Court decided against the motion and dismissed the warrant on the ground, that the Act of 1835, did not apply criminally to the case as claimed by the prosecutor.

From this decision the prosecutor appealed by *certiorari* to the Superior Court.

After argument, the Court below dismissed the *certiorari* on the ground "that as the original proceedings in the Court below, viz: the Inferior Court of Baldwin county, was of a criminal nature, and the Inferior Court had decided in favor

of the defendant therein, that therefore the Superior Court had no constitutional power to order a rehearing."

To these decisions of the Court the informer John M. Tucker filed his bill of exceptions, assigning the same as error.

McKINLEY, for the plaintiff in error.

KENAN & HARRIS, *contra.*

*By the Court.*—LUMPKIN J. delivering the opinion.

The woman *Lavinia* was informed against for violating the 6th section of the Act of 1818, *Cobb* 992, for working at large and enjoying the profits of her labor, not being in the employment of any master or owner, or of any white person, by virtue of any contract with a master or owner, securing to such master or owner the profits arising from the labor of said slave, being a woman of color.

Wilkes was prosecuted for violating the 5th section of the Act of 1835, *Cobb* 1008, which prohibits a male slave from returning to this State, after having been in a non-slaveholding State. The accused were duly arrested and brought before the Justices of the Inferior Court of Baldwin county, or a majority of them, and severally put upon their trial; and after hearing the evidence were acquitted and discharged by the Court.

[1] Both cases were brought before the Superior Court by *certiorari*, and Judge Hardeman dismissed the *certiorari* on the ground, that the defendants having been acquitted by the proper tribunal, constituted by law for their trial, he had no constitutional power to order a rehearing. To reverse this decision, these writs of error are prosecuted. We are of the opinion that no error was committed by the Circuit Judge, Independent of the Act of 1803, which negatives the idea, that slaves can be twice tried for the same offence, *Clayton's*

*Digest page* 133, we see no reason why this great principle of the common law should not be applicable to slaves and free persons of color, as well as to white persons. Indeed counsel concede that slaves are protected by this humane principle, as to all prosecutions which subject them to corporal punishment. But he insists, that the great policy of the State as manifested in her anti-manumission laws forbids that the doctrine should be extended to cases like these. While we concur with our brother McKINLEY, that our policy is not to favor the freedom of the slave, real or colorable, still the State has passed no statute, making the discrimination contended for. On the contrary, there is abundant evidence upon the statute book, that she has guarded with a magnanimity worthy of her power and greatness, the liberty of persons of color claiming to be free.

In the opinion of this Court, there is nothing either in the 7th section of the 3d article of the Constitution of the State, *Cobb* 1123, giving to the Judges the right to use all writs necessary to carry their powers fully into effect; nor in the 10th section of the Act of 1818, *Cobb* 994, making it the duty of all Courts and Judges, before whom any proceeding may be had, under that Act, so to construe the several provisions thereof, as to carry the same into complete operation, according to the true spirit, intent and meaning thereof, as declared in the preamble, which will justify the interposition of the Superior Court in these cases.

The Act of 1829, not referred to by counsel, *Cobb* 1020, is evidence that the Superior Courts did not claim to exercise the power of controlling the Inferior Judicatories, as to the trial of slaves. It is expressly conferred by that Act *in certain cases,* namely, the trial of slaves and free persons of color, under the Acts of December 1811 and 1816; and of any Acts amendatory thereof. The prosecutions in the two cases before us, were not under either of those Acts or any other amendatory thereof, but for violations of the Acts of

1818 and 1835. The inclusion of the one class of cases, is the exclusion of all others.

It is worthy of notice, that notwithstanding the *words* of the Act of 1829, gives to "either party the right to *certiorari* any proceeding originating under the acts therein specified, it is not believed that the *State* has ever claimed to exercise the right; that is to obtain a second trial when a slave has been acquitted, and we apprehend it would hardly be tolerated, especially if the discharge was upon the merits. The words either party have probably been construed to be equivalent to any *party*, that is, any party *defendant*. In the face of this statute, it is not denied that an acquittal from the offences designated in the Acts of 1811 and 1816, and the Acts amendatory thereof, is final.

But we repeat, it is needless to dwell upon this Act. The cases under consideration do not come within its provision.

[2.] But there is another principle involved in this discussion which has been entirely overlooked. Suppose Judge HARDEMAN was wrong, can his errors be brought up by the *State*, before this Court for revision? This question was solemnly argued and decided by this Court in the *State vs. Jones*, 7 *Ga. Rep.* 422, in which was held, that a writ of error does not lie to this Court, in a criminal case, at the instance of the State. We adhere to that position. We believe it to be a sound exposition of the Act of 1845, creating this Court. Counsel for the State approve of that determination. It might be conceded then, that the Circuit Court had the right to correct the alleged error committed by the Inferior Court in acquitting these prisoners; still it may be assumed that this Court can take no cognizance of the judgment of the Superior Court.

One word as to the Act of 1835. Does it not need amendment? Does not a slave who is carried by his owner to a non-slaveholding State and voluntarily returns, give the highest evidence of his fidelity to the South? Besides, by examining the language of that Act, it is directly repugnant to the

fugitive slave law of 1850. The owner subjects himself to a penalty for bringing back his runaway from the free States. A slave who has escaped and is brought back *in invitum*, is likely to be a more dangerous person than one who comes back of his own accord.

Judgment affirmed.