## STATE OF GEORGIA *v.* STEELE.

1. This being a case wherein an execution for costs was issued against the prosecutor in a criminal case upon a judgment entered by the officer issuing the warrant, reciting that the prosecution was abandoned before trial, and the evidence upon the trial of an issue formed by an affidavit of illegality filed by the prosecutor, setting up that the judgment did not speak the truth, being such as to demand a finding that the prosecution had been in fact abandoned before the trial, the verdict in favor of the plaintiff in execution on this issue should not have been disturbed. Whether in such a case an issue of the nature above indicated can be properly raised by an affidavit of illegality is not now decided.
2. When the officer who issued the warrant enters a judgment against the prosecutor for the costs on the ground that the prosecution was abandoned before trial, and such judgment is sought to be enforced only by an execution against the property of the prosecutor, and payment of the same is resisted by an affidavit of illegality, the proceeding is not in any sense a "criminal case."

Argued October 6, — Decided October 27, 1900.

Certiorari. Before Judge Janes. Haralson superior court. January term, 1900.

*E. S. & G. D. Griffith,* for plaintiff.
*James Beall,* for defendant.

Cobb, J. Steele as prosecutor caused a warrant to be issued against certain persons, charging them with the offense of larceny from the house. When the time arrived for the commitment trial the officer who issued the warrant entered a judgment against the prosecutor for the costs in the case, reciting in such judgment that the prosecutor had before trial abandoned the prosecution. Execution in the name of the State of Georgia was issued on this judgment, and the defendant therein interposed an affidavit of illegality, setting up that the execution was proceeding against him illegally, for the reason that no judgment was rendered against him as the foundation for the execution, and because he did not abandon the

prosecution. At the trial the jury found the issues formed upon the affidavit of illegality in favor of the plaintiff in execution. The case was carried to the superior court by certiorari, and the judge sustained the certiorari and made a final judgment in the case. To this judgment the plaintiff in execution excepted.

1. By the act of December 14, 1811 (Cobb's Dig. 644), it was provided that where any person brought before a justice of the peace was discharged for want of a sufficient cause of commitment, the justice could, in his discretion, direct the costs to be paid by the prosecutor. In *Gault* v. *Wallis*, 53 *Ga.* 675, it was held that this act, though not embodied in the code, was still of force. By an act passed in 1876 (Acts 1876, p. 108), the provision in the act of 1811 above referred to was expressly repealed. The Code of 1895 re-enacted the provision, and the same is now embodied in the Penal Code, § 925, in the following language : "If the accused should be discharged for want of sufficient cause of commitment, the justice may, in his discretion, direct the costs to be paid by the prosecutor." Section 1082 of the Penal Code declares that "The prosecutor's name shall be endorsed on every indictment, and he shall be compelled to pay all costs and jail fees, upon the acquittal or discharge of the person accused," in three cases, one of them being, "when the prosecution is abandoned before trial." In such a case the officer who issued the warrant is required to enter a judgment against the prosecutor for all the costs and enforce it by an execution issued in the name of the State, or by an attachment for contempt. Apparently this provision would apply only to prosecutions by indictment, but an examination of the different laws from which the section is derived will show with certainty that the provision is not so limited. The provision, that the prosecutor's name shall be endorsed upon every indictment, appears in the Penal Code of 1833 (Cobb's Dig. 833), in a section which relates to cases where the grand jury return "no bill" and express it as their opinion that the prosecution was unfounded or malicious, and where the petit jury return a verdict of "not guilty" and express a similar opinion. It was provided by that act that in either of the cases mentioned the prosecutor should be compelled to pay the costs. The power to enter judgment for costs against the prosecutor in a case where the prosecution is abandoned is derived from an act passed in 1871 (Acts 1871–2, p. 53), which declared that whenever any

person is prosecuted under any penal law of this State, and the prosecution is abandoned before trial, or a jury on the trial of the same find it to be malicious, the prosecutor shall be liable for the costs and jail fees, "and the officer by whom the warrant is issued shall, when the prosecution is abandoned or settled, at once enter up a judgment against said prosecutor for all said costs," and enforce the same by execution or by an attachment for contempt. The use of the word "prosecution" without any qualifying word, as well as the broad expression, "the officer by whom the warrant is issued," which includes any officer authorized by law to issue a warrant, clearly indicates that it was the intention of the legislature to punish a person who abandoned a prosecution, whether such abandonment took place before the committing magistrate had disposed of the case, or had reached the condition of a prosecution by indictment.

It is contended by counsel for plaintiff in error that the justice in entering judgment in the present case was proceeding under section 1082 of the Penal Code; while counsel for the defendant in error contends that the judgment was entered under authority of section 925. As the evidence in the record shows that there never was any trial before the justice, of course the validity of the judgment for costs against the prosecutor depends upon whether the case falls within the provisions of section 1082, and section 925 has no application to the case. Taking the evidence as contained in the answer of the magistrate, which was untraversed, it demanded a finding that the prosecutor had abandoned the prosecution. This being true, and as there was no motion in the justice's court to dismiss the affidavit of illegality, it is not necessary to determine whether the prosecutor in such a case can by an affidavit of illegality raise the question as to whether the recital in the judgment, that he had abandoned the prosecution, was the truth. It appears from the answer of the magistrate that the judgment for costs was entered in due form, and also that the prosecutor had notice that the same had been entered, as well as timely warning that if he abandoned the prosecution it would be so entered. Upon the facts disclosed by the record, we think the court erred in sustaining the certiorari.

2. When the case was called in this court a motion was made to dismiss the writ of error, on the ground that the proceeding had

in the justice's court was a criminal case. If it was a criminal case, this court has no jurisdiction of a writ of error sued out at the instance of the State. The case had its origin in a prosecution under the criminal laws of the State. The term "criminal case" has never been defined by this court. It is clear that all prosecutions for crime in the name of the State for a violation of its penal laws are criminal cases. It has been held that a prosecution for a violation of a municipal ordinance, although instituted in the name of the municipality, is to be treated for some purposes as a criminal case. (*Mayor* v. *Wood*, 109 *Ga.* 149; *Barnett* v. *Atlanta*, 109 *Ga.* 166), although such a prosecution is not always embraced within the term "criminal case," as that is used in the statutes of the State. *Holliman* v. *Hawkinsville*, 109 *Ga.* 107. A prosecution for contempt of court, founded upon a rule nisi by the judge, has been treated as a criminal case within the meaning of the statute which provides for a speedy hearing of criminal cases in this court. This was done in the cases of *Bradley and Looney* v. *State*, 111 *Ga.* 168. No proceeding, even though it was instituted in the name of the State, has ever been held to be a criminal case unless the judgment rendered might in some contingency result in the loss of liberty to the person against whom the proceeding is had. A ruling, that a proceeding in the name of the State, which at most could never result in anything but the property of the citizen being seized and sold for the payment of a debt due the State either directly or for the benefit of its officers, was a criminal case, would indeed be an anomaly in the law. Such a proceeding has all of the attributes of a civil case, and not a single element of a criminal case is present, notwithstanding the process upon which it is founded is issued in the name of the State. But it is urged, as a reason why the proceeding should be held to be a criminal case, that the judgment against the prosecutor may be enforced by an attachment for contempt, and that upon such an attachment the prosecutor could be deprived of his liberty. A sufficient answer to this contention is that in the present case the judgment is not sought to be so enforced. The statute gives both a civil and a penal remedy, and the State, through its officers, has elected to pursue the former rather than the latter. Having elected to prosecute the civil remedy, it would seem that the State could not pursue the other, at least not

without expressly abandoning the civil remedy; but that question is not now before us.

It was further insisted that the writ of error should be dismissed because "the condemnation bond" was not properly executed. It is sufficient to say, in regard to this contention, that no condemnation bond appears in the record, and we can not tell what question is sought to be raised by this ground of the motion.

*Judgment reversed. All the Justices concurring.*