BOHANNON *v.* DUNCAN, director.

No. 12017. MARCH 15, 1938.

*V. E. Adams,* for plaintiffs.

*Pat Avery, Warren Grice, Crenshaw, Hansell & Gunby, Candler, Cox & McLamb, Harold Hirsch, Marion Smith, A. S. Clay,* and *J. H. Boman Jr.,* for defendant.

PER CURIAM. 1. Since all reasonable presumptions favor the constitutionality of a legislative act, and the burden of showing to the contrary is on the attacking party, "legislative ascertainments and determination of facts, unless plainly contrary to those matters of common knowledge of which the courts may take judicial notice, are entitled to such weight as to require clear allegation and proof showing to the contrary before the courts would be justified" in so holding. Miami Home Milk Producers Asso. *v.* Milk Control Board, 124 Fla. 797 (169 So. 541). Section 1 of the "milk-control" act approved March 30, 1937 (Ga. L. 1937, pp. 247, 248), states as follows: "Declaration of Legislative Policy. As a matter of legislative determination, it is hereby declared that milk is a necessary article of food for human consumption; that the production and maintenance of an adequate supply of healthful milk is vital to the public health and welfare; that uneconomic practices in the production, transportation, processing, storage, distribution, and sale of milk within the State of Georgia constitute a constant menace to the health and welfare of the inhabitants of this State and undermine sanitary regulations and standards of content and purity; that, even with stringent enforcement of sani-

tary regulations, these uneconomic practices threaten seriously to impair and ultimately to destroy the supply of wholesome and healthful milk for adults and children within this State; that these facts have created an emergency situation; and that, to preserve the health of the people of this State, it is necessary in this emergency and in the public interest that the distribution and sale thereof be regulated as provided herein." The instant petition by milk consumers, attacking the act as preventing their purchase of milk at uncontrolled prices in the open market, set forth merely that "there *is* no emergency in Georgia authorizing legislative interference with a purely private industry such as the dairy business and the retail of milk to consumers in Georgia." Accordingly, irrespective of whether the constitutionality of the act depends upon the existence of the "emergency," declared by the act to exist at the time it was passed (see Standard Oil Co. *v.* Marysville, 279 U. S. 582, 586, 49 Sup. Ct. 430, 73 L. ed. 856, and cit.; Borden's Farm Products Co. *v.* Ten Eyck, 297 U. S. 251, 263, 56 Sup. Ct. 453, 80 L. ed. 669), the petition not only failed to set forth any facts to controvert the legislative declaration on that subject, but failed to allege that no emergency existed at the time of the enactment. Therefore on demurrer the case will be treated "upon the theory that there was in fact such an emergency at the time of the passage of the act, since we judicially know nothing to the contrary," as was done by the Supreme Court of Alabama in passing upon a similar act and constitutional attack. Franklin *v.* State ex rel., etc., 232 Ala. 637 (169 So. 295), and cit. No averment is made and no facts are alleged to authorize a contention that, although an emergency existed at the time of the enactment, the force and effect of the act have now ceased to exist, before August 15, 1941, the time declared by the act as the end of the "emergency period" and the continuance of the act, on the ground that such a pre-existing emergency has ceased to exist.

2. Under the decision of the Supreme Court of the United States in Nebbia *v.* New York, 291 U. S. 502 (54 Sup. Ct. 505, 78 L. ed. 940, 89 A. L. R. 1469, 1476, 1480, 1482, 1483), which upheld a similar New York milk-control law upon attack under the fourteenth amendment of the constitution of the United States, and which decision as to that amendment is controlling and as to similar provisions in the State constitution is strongly persuasive, the

prohibitory provisions as to "due process of law" and "the equal protection of the laws" (Code, § 1-815) do not preclude the State legislature from regulating a "business affected with a public interest," which is the equivalent of saying "subject to the exercise of the police power," where, as here, such regulation is not "unreasonable, arbitrary, . . capricious, [or] discriminatory, and the means selected . . have a real and substantial relation to the object sought to be obtained." Under that decision, such regulation may include "the prices to be charged for the products or commodities;" and "the function of courts in the application of the . . fourteenth amendment is to determine in each case whether circumstances vindicate the challenged regulation as a reasonable exertion of governmental authority, or condemn it as arbitrary and discriminatory." As was held in that case, the production, distribution, and sale of milk to the general public is a business that vitally affects the public, and therefore subject to such legislative control and regulation, under a milk-control board authorized, as by the Georgia act, to fix maximum and minimum prices after investigation and determination of the facts. See also Hegeman Farms Cor. v. Baldwin, 293 U. S. 163 (55 Sup. Ct. 7, 79 L. ed. 259) ; and decisions of other States, upholding the validity of milk-control laws: Reynolds v. Milk Commission, 163 Va. 957 (179 S. E. 507) ; State Board of Milk Control v. Newark Milk Co., 118 N. J. Eq. 504 (179 Atl. 116) ; Rohrer v. Milk Control Board, 322 Pa. 257 (186 Atl. 336) ; Albert v. Milk Control Board, 210 Ind. 283 (200 N. E. 688) ; State ex rel. Finnegan v. Lincoln Dairy Co., 221 Wis. 1 (265 N. W. 197, 851) ; State v. Fairmont Creamery Co., 162 Minn. 146 (202 N. W. 714, 42 A. L. R. 548) ; Franklin v. State, supra ; Miami Home Milk Producers Asso. v. Milk Control Board, supra; and other cases cited in 101 A. L. R. 65, 66, 70-72; 89 A. L. R. 1495; 80 A. L. R. 1225; 58 A. L. R. 672; 42 A. L. R. 556; 18 A. L. R. 235. Although in the Nebbia case the attack was made by a dealer, and in other cited cases by dealers or distributors, consumers as prospective purchasers, as in this case, would have no stronger ground of complaint against the act as discriminatory and violative of due process of law than would dealers or sellers.

3. The legislative department of the State, wherein the constitution has lodged all legislative authority, will not be permitted to

relieve itself by the delegation thereof. It can not confer on any person or body the power to determine what the law shall be. But this constitutional inhibition does not prevent the grant of legislative authority to some administrative board or other tribunal to adopt rules, by-laws, or ordinances for its government, or to carry out a particular purpose. Thus, while it is necessary that a law, when it comes from the lawmaking power shall be complete, still there are many matters as to methods or details which the legislature may refer to some designated ministerial officer or board. Cooley's Const. Lim. 114. The constitutional prohibition, therefore, does not deny to the lawmaking body "the necessary resources of flexibility and practicality, which will enable it to perform its function in laying down policies and establishing standards, while leaving to selected instrumentalities the making of subordinate rules within prescribed limits and the determination of facts to which the policy as declared by the legislature is to apply." Schechter v. U. S., 295 U. S. 495 (55 Sup. Ct. 837, 79 L. ed. 1570, 97 A. L. R. 947, 957); Panama Ref. Co. v. Ryan, 293 U. S. 388 (79 L. ed. 223); *Aultman* v. *Hodge,* 150 *Ga.* 370, 372 (104 S. E. 1); *Maner* v. *Dykes,* 55 *Ga. App.* 436, 438 (190 S. E. 189), and cit. The State milk-control act, sufficiently fixing the policy, general rules, and methods by which the milk-control board should exercise its functions, the mere vesting of power in the board to find facts after investigation and to fix maximum and minimum prices based thereon did not render the act violative of the constitutional provision (Code, § 2-1201) vesting all legislative power in the General Assembly, on the ground that the act transferred such power to the board. See also Albert v. Milk Control Board, 210 Ind. 283, and Franklin v. State, 232 Ala. 637 (supra).

4. Under the preceding rulings, which dispose of all grounds of constitutional attack raised by the petition, the court did not err in dismissing the petition on general demurrer.

*Judgment affirmed. All the Justices concur, except Russell, C. J., dissenting, and Grice, J., disqualified.*