GLUSTROM *v.* THE STATE.

No. 16960. FEBRUARY 14. 1950. REHEARING DENIED MARCH 30, 1950.

O. J. Coogler Jr., and Newell Edenfield, for plaintiff in error.

John I. Kelley, Solicitor, Paul Webb, Solicitor-General, and William Hall, contra.

HEAD, Justice. The courts of this country, including the Supreme Court of the United States, have long recognized the right of an administrative agency of government to make rules and regulations to carry into effect a law already enacted. Georgia Railroad v. Smith, 70 Ga. 694; Southern Railway Co. v. Melton, 133 Ga. 282 (65 S. E. 665); Bohannon v. Duncan, 185 Ga. 840 (196 S. E. 897); Zuber v. Southern Ry. Co., 9 Ga. App. 539 (71 S. E. 937); U. S. v. Grimaud, 220 U. S. 506 (31 Sup. Ct. 480, 55 L. ed. 563). The power to adopt rules and regulations differs from the power to enact a law. Georgia Railroad v. Smith, supra. The lawmaking power of this State is vested solely in the General Assembly. Constitution, art. 3, sec. 1, par. 1 (Code, Ann., § 2-1301).

In the adoption of the Constitution of 1945, the people of this State provided many safeguards against an abuse of the legislative power. Article 3 deals with the manner in which the General Assembly shall exercise its legislative powers. Sec. 4, par. 3 of this article (Code, Ann. Supp., § 2-1603) provides for the time of meeting and adjournment of the General Assembly, and par. 4 (Code, Ann., § 2-1604) requires a majority of each house present to transact business. Sec. 7, par. 4 (Code, Ann., § 2-1904) requires each house to keep a journal of its proceedings and publish it immediately after adjournment. Par.

6 of the same section (§ 2-1906) requires that the yeas and nays be recorded on any measure at the desire of one-fifth of the members present; and par. 7 (§ 2-1907) requires that every bill, before passage, be read three times, on separate days, in each house. Par. 8 of the same section (§ 2-1908) prohibits the passage of any law that refers to more than one subject-matter, or contains matter different from that expressed in the caption. Par. 13 of the same section (§ 2-1913) provides that all acts shall be signed by the presiding officers of the House and Senate, and that no bill which has been rejected by either house shall be proposed again in the same session without the consent of two-thirds of the body by which it was rejected. Par. 14 of the same section (§ 2-1914) provides that no bill shall become a law unless it shall receive a majority of the votes of the members of both houses, and that it shall in every instance so appear in the Journal. Par. 15 of the same section (§ 2-1915) provides that no local or special bill shall be passed until after notice of intention to apply therefor shall have been published in the newspaper in which the sheriff's advertisements are published for the locality affected, once a week for three weeks, during a period of sixty days preceding its introduction. Par. 16 (§ 2-1916) provides that no law, or. section of the Code, can be amended or repealed by mere reference to its title, or to the number of the section of the Code, but that the amending or repealing act must clearly and distinctly describe the law to be amended or repealed.

There are other provisions of the Constitution applicable to the enactment of a law, but the foregoing are sufficient to indicate the expressed will of the people of this State that the lawmaking power shall be exercised only within defined limits. The limitations imposed upon the lawmaking power of the General Assembly by the Constitution of 1945 do not constitute a departure from previous rules of government in this State. The Constitution of 1877, and all prior Constitutions of this State, imposed restrictions on the lawmaking power of the General Assembly.

In U. S. v. Grimaud, supra, the Supreme Court reversed the judgment of the lower court sustaining demurrers to an indictment based upon rules and regulations promulgated by the Sec-

retary of Agriculture. In that case it was said that the Secretary of Agriculture could not make rules and regulations for any and every purpose, that the subjects which the Secretary could regulate were defined, but, as to the rules and regulations involved, Congress had clearly indicated and authorized the rules.

In considering the power conferred by the General Assembly in the present instance to formulate rules, and the particular regulation which the defendant is charged with violating, we must apply the rule that all criminal statutes are to be strictly construed. In *Hill* v. *State,* 53 *Ga.* 127, it was said: "The rule that criminal statutes are to be construed strictly, is hoary with age, and has the uniform sanction of all courts." In this case, the power to adopt rules and regulations, administrative in character and for the policing of a particular business authorized by law, should not be confused with the power to enact a criminal statute. A criminal wrong is in violation of justice, and by such wrongs the existence of the State is assailed. The violation of a policing regulation attacks only the administration of a law. A criminal wrong concerns principle; a policing regulation by an administrative agency of government concerns procedure. A criminal offense or wrong is the breach of a negative command—"Thou shalt not steal" (Exodus 20:15). The policing regulation, on the contrary, says, "You must do this in a particular way." Compare 1 Wharton's Criminal Law, 44, § 29.

An administrative agency of government, such as the Department of Revenue, can have only the administrative or policing powers expressly or by necessary implication conferred upon it. *Bentley* v. *State Board of Medical Examiners,* 152 *Ga.* 836 (111 S. E. 379). By the Act to Tax, Legalize and Control Alcoholic Beverages and Liquors, the General Assembly declared violations of the act to be either a misdemeanor or a felony. In thus defining certain violations, the Assembly did not thereby make provision for the full and complete administration of the act. The deficiencies of administration are to be supplied by rules and regulations of the Revenue Commissioner. Generally, the rules and regulations promulgated and presently in force (as shown by the copy of such rules and regulations on file with the State Librarian) are for the purpose of regulating and po-

licing an industry or business generally conceded to be one that is difficult to properly regulate, and keep within the rules of law prescribed for the protection of society in the State generally. The General Assembly must have recognized that in the administration of this law the Revenue Commissioner would promulgate rules and regulations policing in character, requiring particular acts of licensees, and that other acts of such licensees be performed only in a prescribed manner. Rules and regulations could not be limited or confined to those features of the law a violation of which the General Assembly declared to be a crime.

In declaring that a violation of the rules and regulations of the State Revenue Commissioner should be punished as for a misdemeanor, the General Assembly used language which limited the criminal violation to those "in accord with the provisions of this Act." As used by the General Assembly in this instance, "accord" means in harmony with what the Assembly has declared. In other provisions of the act, the General Assembly having declared certain acts to be a crime, the rules and regulations must follow the declaration made. Consequently, the General Assembly has, in effect, said that a violation of the rules and regulations of the State Revenue Commissioner in accord, or in harmony, with those things declared to be a crime by the terms and provisions of the act, shall be a crime. The General Assembly did not provide that the violation of regulations policing the industry and requiring certain acts to be performed in a specified manner would be a misdemeanor. In every instance reasonable rules and regulations promulgated for administrative purposes or for policing the industry may be enforced as to licensees either by a suspension or cancellation of the license. The declaration, that a violation of "rules and regulations in accord with this Act" shall be a misdemeanor, limited the power to promulgate rules, the violation of which would be a misdemeanor, to those in harmony with what the Assembly had already declared to be a crime.

This court will never presume that the General Assembly intended to enact an unconstitutional law. Where the language of an act is susceptible of a construction that is constitutional, and another that would be unconstitutional, that meaning or construction will be applied which will sustain the act. Un-

restrained and unrestricted power by the State Revenue Commissioner to declare a violation of his administrative and policing regulations to be a misdemeanor or such declaration by the General Assembly without limiting the power to those things declared to be a misdemeanor by the Assembly, would offend the Constitution. Applying the limitation contained in § 58-1069, as was evidently intended by the Assembly, the act is not subject to the attacks made upon it.

Rule 602, which forms the basis of the accusation in this case, is an administrative or policing regulation that goes beyond those things declared by the General Assembly to be a misdemeanor. As an administrative rule or policing regulation, it could be enforced against the licensee by suspension or cancellation of his license. It has no other valid force and effect. To permit the General Assembly to abdicate and transfer to administrative agencies of government essential legislative functions, would strike down our constitutional system, and inaugurate the police state, condemned by every advocate of individual liberty and freedom. *Bohannon* v. *Duncan,* supra; Panama Refining Co. *v.* Ryan, 293 U. S. 388 (55 Sup. Ct. 241, 79 L. ed. 446).

The accusation did not charge a crime, because the alleged acts of the defendant (in violation of Rule 602) were not made the subject-matter of any legislative enactment, by the Assembly under its constitutional powers, and his demurrer should have been sustained.

Counsel for the State have thoroughly and ably presented the State's case, and have cited authorities which counsel insist sustain their contentions. No case has been cited which can be said to be in point on its facts with the present case. The ruling here made is not in conflict with the rulings in *Atkins* v. *Manning,* 206 *Ga.* 219 (56 S. E. 2d, 260).

*Judgment reversed. All the Justices concur, except Duckworth, C. J., Candler, and Hawkins, JJ., who dissent.*

## ON MOTION FOR REHEARING.

HEAD, Justice, dissenting. Counsel for the State have filed a motion for rehearing, in which they seek a review of the judgment rendered by this court, and cite in their original motion, as authority for the right of the State to file a motion for rehearing, the case of *Thompson* v. *State,* 67 *Ga. App.* 240 (19 S.

E. 2d, 777). Counsel for the defendant have filed a motion to strike or disallow the motion for rehearing, and contend that the State is not a "party" within the meaning of Rule 40 (c) of this court (Code, Ann. Supp., § 24-4544).

There are physical precedents where this court has acted on motions for rehearing filed by the State in criminal cases. For example, see *Singleton* v. *State,* 196 *Ga.* 136 (26 S. E. 2d, 736); *Bivins* v. *State,* 200 *Ga.* 729 (38 S. E. 2d, 273). In so far as the writer is able to ascertain, however, this court has never said, in any criminal case, that the State could, as a matter of right, file a motion for rehearing.

In *Thompson* v. *State,* supra, the defendant was convicted, and excepted to the overruling of his demurrers to the indictment and motion for new trial. Originally the Court of Appeals reversed the judgment of the trial court on the theory that the trial judge erred in overruling the demurrers. Upon rehearing, at the instance of the State, the judgment of reversal was vacated and a judgment of affirmance substituted. The decision in the *Thompson* case was by two Judges, with Judge Gardner dissenting from the ruling that a rehearing will be had in a criminal case upon a proper motion by counsel for the State. The majority opinion cites no authority for holding that a motion for rehearing may be granted in a criminal case on motion of counsel for the State.

The rule announced by the Court of Appeals in the *Thompson* case is in conflict with the general law in this State, and the general rule in the Federal and State courts of this country. It appears to conflict also with the general rule in England. The general rule, that there may not be a rehearing on motion of the State, was considered by this court in *State* v. *Jones,* 7 *Ga.* 422. In the *Jones* case it appears that a motion was made to quash the indictment in the court below. The motion was sustained, and the State brought a writ of error. It was said by the court that three questions were before it, as follows: "1. Whether, upon general principles, the State is entitled to a review in any form of alleged errors in criminal cases? 2. Whether the Constitution of the United States has any bearing upon the question? and, 3. Whether the Act of our own Legislature, organizing this Court, has granted to the State the right of being heard upon a writ of error in criminal cases?"

In the *Jones* case it was held in part: "The rule seems to be well settled in England, that in criminal cases a new trial is not grantable to the Crown after verdict of acquittal, even though the acquittal be founded on the misdirection of the Judge. This is the general rule, and obtains in the States of our Union. It excludes a rehearing after acquittal upon errors of law, and therefore, it would seem, denies also a rehearing upon judgments of the Court upon questions of law, even when the Jury have not passed upon the guilt or innocence of the prisoner. *If the effect of the judgment is a discharge, there can be no rehearing, either by new trial or writ of error.* Indeed it may be stated as a general rule, that in criminal cases, upon general principles, errors are not subject to revision at the instance of the State." (Italics ours.)

The reason for the rule announced in the *Jones* case was stated by the court in the following language: "The trial of a citizen for a violation of the Criminal Law, is a very different thing from the trial of civil rights between two citizens. The forms of procedure, and the principles upon which they proceed, are different. When the prosecution is upon information, the prosecutor is not to be viewed in the light of a party. He has no rights to be violated by denying the writ of error—he has no more interest in the administration of criminal justice than has every other citizen. The offense to be punished is against the people. The violation is of a public law—the object of the trial is not compensation or restitution, or the settlement of conflicting claims to property, but punishment if there is guilt. The punishment inures to the safety and peace of the whole body politic. If there is, by reason of the offense charged, an injury done, especially to any one person, he has a remedy for the wrong. In criminal trials, the State—the supreme authority— that authority which makes the law, and prescribes its penalty, and executes its judgments—moves against the citizen. The Court, the Jury and the Solicitor General are its agents. The State is not a party—the State is rather an accuser—she charges crime, arrests, tries, convicts and executes. In criminal causes, the State, through her agents, is the judge who tries the accused. In civil cases, she stands aside and leaves the parties to litigate upon equal terms before a tribunal independent of ·both. Thus un-

equally do the State and the defendant enter upon an issue, the result of which may involve the liberty or life of the one, and no sensible consequence to the other. · *Viewed in this light, it is a concession in behalf of the defendant, both humane and reasonable, that the State should not review her own errors—that she should decide but once."* (Italics ours.)

Under the rule stated in the *Jones* case (that the State should not review her own errors), where the effect of the ruling is an acquittal or discharge, there can be no review at the instance of the State. It is significant that at the time of the ruling in the *Jones* case the law in effect with reference to the right of review in this court was that "All causes of a criminal or civil nature may, for alleged error in any decision, sentence, judgment or decree of any such Superior Court, be carried up from the counties of the respective districts aforesaid, to the Judges of the Supreme Court, at the respective terms thereof for such district, to be by said Supreme Court revised and determined." Yet, under this provision, it was held that there could be no appeal or review by the State. The provision that all causes of a criminal or civil nature might be reviewed in the Supreme Court remained in effect until the adoption of the Code of 1863, at which time the present Code § 6-901 was codified, the first sentence of which is a follows: "Either party in any civil cause, and the defendant in any criminal proceeding, in the superior or city courts, may except to any sentence, judgment, or decision, or decree of such court, or of the judge thereof in any matter heard at chambers." See Code of 1863, § 4160.

The rule announced in *State* v. *Jones,* supra, was followed in *Cranston* v. *Augusta,* 61 *Ga.* 572. In the *Cranston* case, Justice Bleckley, in speaking for the court, said: "The State cannot have the writ of certiorari or a writ of error to revise a judgment of discharge by its courts." In *State* v. *Johnson,* 61 *Ga.* 640, this court held that "a writ of error does not lie in behalf of the State in a criminal case." In *State* v. *Lavinia,* 25 *Ga.* 311, it was said: "A writ of error does not lie to this court, in a criminal case at the instance of the State." To the same effect, see *Mayor & Council of Hawkinsville* v. *Ethridge,* 96 *Ga.* 326 (22 S. E. 985); *Mayor & Council of Macon* v. *Wood,* 109 *Ga.* 149 (34 S. E. 322); *Barnett* v. *Atlanta,* 109 *Ga.* 167 (34 S. E. 322). In *State* v.

*Steele,* 112 *Ga.* 42 (37 S. E. 174), this court reiterated that it has no jurisdiction of a writ of error sued out at the instance of the State.

In *Eaves* v. *State,* 113 *Ga.* 749, 754 (39 S. E. 318), it was said: "We hold that the State is without any right to a writ of error in a criminal case by either main or cross-bill of exceptions. The cross-bill filed in the present case was not authorized by law, and this court is without jurisdiction to entertain the writ of error." The *Eaves* case cites many of the earlier decisions to the effect that there can be no review at the instance of the State and reaffirms the earlier decisions.

The general rule as to review is stated in 24 C. J. S., 258, § 1659, as follows: "In the absence of a statute expressly so providing, the state cannot appeal from an order granting accused a new trial, or from an order quashing a conviction and sentence." In 2 Am. Jur., 984, § 227, the general rule is stated as follows: "In the absence of a statute clearly conferring the right as a general rule, the State or United States cannot appeal or bring error proceedings from a judgment in favor of the defendant in a criminal case."

The Congress of the United States by the Criminal Appeals Act of March 2, 1907 (U. S. Code, Ann., Title 18, § 682), has provided that a writ of error will lie on behalf of the United States from a district court to the Supreme Court of the United States, from a decision quashing an indictment or sustaining a demurrer thereto, where the judgment is based on the invalidity of a statute; from a decision arresting a judgment for insufficiency of the indictment; and from a decision or judgment sustaining a special plea in bar, where the defendant has not been put in jeopardy. But this act has been construed strongly against the Government, and liberally in favor of the defendant. See United States *v.* Weissman, 266 U. S. 377 (45 Sup. Ct. 135, 69 L. ed. 334).

In some States an appeal is permitted at the instance of the State from an order sustaining a motion to quash or a demurrer to an indictment. There is not now, nor has there ever been, in this State any statute or constitutional provision authorizing an appeal or review at the instance of the State. In those States permitting an appeal by the State, where a motion to quash, or

a demurrer to the indictment, is sustained, no provision is made for a rehearing at the instance of the State from any verdict of acquittal or discharge of the defendant by the court of last resort. See 92 A. L. R. 1146.

In *B'Gos* v. *State*, 43 *Ga. App.* 379 (159 S. E. 137), the Court of Appeals reversed a verdict of guilty on two counts, holding that the evidence showed only one scheme, and that, obviously, the accused could not be guilty on both counts of the accusation. A motion for rehearing was filed by the State, and on rehearing the judgment of reversal was adhered to. An application by the solicitor-general (the State) for a writ of certiorari was dismissed by this court, it being held: "The Supreme Court of Georgia is without jurisdiction to entertain, at the instance of the State, a petition for certiorari to the Court of Appeals in a criminal case." *State* v. *B'Gos*, 175 *Ga.* 627 (165 S. E. 566). In the body of the opinion (at page 638), this court quoted with approval from the case of United States *v.* Sanges, 144 U. S. 310 (12 Sup. Ct. 609, 36 L. ed. 445) (which was an appeal by the Government from an order, sustaining a demurrer, by the District Court for the Northern District of Georgia), as follows: "It is settled by an overwhelming weight of American authority that the State has no right to sue out a writ of error upon a judgment in favor of the defendant in a criminal case, except under and in accordance with express statutes, whether that judgment was rendered upon a verdict of acquittal, or upon determination by the court of a question of law." In dismissing the application for certiorari, in the *B'Gos* case, this court reviewed and quoted from many of the earlier decisions of this court cited in this dissent.

Provision was not made for a writ of certiorari from this court to the Court of Appeals at the time the latter court was created. By a constitutional amendment, adopted in 1916 (Ga. L. 1916, p. 19), it was provided: "It shall also be competent for the Supreme Court to require by certiorari or otherwise any case to be certified to the Supreme Court from the Court of Appeals for review and determination with the same power and authority as if the case had been carried by writ of error to the Supreme Court." Notwithstanding this constitutional authority, which is not limited by its terms to civil cases, it was held in

*State* v. *B'Gos,* supra, that this court was without power to review a criminal case from the Court of Appeals at the instance of the State.

There is no statute or constitutional authority for review in this court by motion for rehearing. *Cooper* v. *Portner Brewing Co.,* 113 *Ga.* 1 (38 S. E. 347). Any contention that the State is a "party," under subsection (c) of Rule 40 of this court, is without merit. It was held by this court that the word "party" as used in the Code, § 6-901, does not apply to the State, so as to permit a cross-bill of exceptions. *Eaves* v. *State,* supra. In *State* v. *Jones,* supra, it was held that the word "party," as used in reference to review, does not include the State. The present Code section provides for an appeal only by the defendant in a criminal proceeding. In the light of the decisions of this court above cited, and of the Code section referred to, the writer will not infer that this court, in the adoption of Rule 40, intended to disregard full-bench decisions of this court defining a party, and the Code, § 6-901, limiting the right of review to the defendant in a criminal case.

The Fifth Amendment to the Federal Constitution (Code, § 1-805), provides in part as follows: "Nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." The State Constitution, art. 1, sec. 1, par. 8 (Code, Ann., § 2-108), provides: "No person shall be put in jeopardy of life, or liberty, more than once for the same offense, save on his, or her own motion for a new trial after conviction, or in case of mistrial."

It has been said by this court that it is a well-settled principle that, in affording protection to defendants under the above constitutional provisions, if the indictment is so defective as to afford good cause for arresting the judgment, there is no jeopardy. *Simmons* v. *State,* 106 *Ga.* 355 (32 S. E. 339). This court by the judgment rendered in this case has said that the indictment was fatally defective, in that it failed to charge a crime. If a rehearing should be granted at the instance of the State, the judgment for the defendant vacated, and a judgment entered holding that the indictment did charge a crime, would not the spirit of these constitutional provisions be violated?

Independent of any constitutional prohibition affording pro-

tection from double jeopardy, there should be no review of alleged errors in criminal cases in the courts of review of this State on motion of the State. The right of this court and the Court of Appeals to revise opinions, as was done *In re Fite*, 11 *Ga. App.* 665 (76 S. E. 397), is not related to the right of the State to file a motion for rehearing in any criminal case. While the judgments of this court are completely under its control during the term at which they are rendered, until the remittitur has been transmitted to the court below, it is the writer's opinion that there is no authority, constitutional, statutory, or otherwise, granted to the State to file a motion for rehearing, as a matter of "right," in this court, where the effect of the judgment as originally entered is a discharge of the defendant.

For the reasons stated, I am convinced that the motion for rehearing filed by the State in this case should have been dismissed. I am authorized to say that Mr. Justice Wyatt and Mr. Justice Almand concur in this view.