### 35580. KALER et al. v. COMMON CAUSE OF GEORGIA et al.

Jordan, Justice.

Common Cause of Georgia, the appellee, sued in Fulton Superior Court to enjoin the State Campaign and Financial Disclosure Commission, the appellant, from publicly adopting the following interpretation of the

Campaign and Financial Disclosure Act (Code Ann. Ch. 40-38 (1979)): "Contribution," as defined by said Act ("anything of value conveyed or transferred for the purpose of influencing the nomination for election or election of any person for the offices provided for in § 40-3802" — Code Ann. § 40-3803(c)), includes a candidate's *transfer* of personal funds to his campaign committee for that body's expenditure on behalf of the candidate's campaign, but does not include a candidate's *expenditure* of personal funds toward the same end.

The trial court granted the appellee's prayer for permanent injunction and the appellant appeals. We affirm.

The Campaign and Financial Disclosure Act provides that the candidate shall file with the appropriate authorities a " 'Campaign Financing Disclosure Written Report' . . . setting forth all expenditures of $101 or more and *all contributions of $101 or more,* including contributions and expenditures of lesser amounts when the aggregate amount thereof *by* or to *a person* is $101 or more *in the aggregate* for the calendar year in which the report is filed." Code Ann. §§ 40-3803(g); 40-3806. Further, "person" is expressly defined by the Act to mean "an individual, partnership, committee, association, corporation, labor organization, or any other organization or group of persons." Code Ann. § 40-3803(e).

These statutory provisions, in conjunction with the definition of "contribution" quoted in paragraph one of this opinion, expressly direct that the candidate publicly report, as a "contribution," all aggregate conveyances or transfers of $101 or more, by anyone, for the purpose of influencing the nomination for election or election of any person for the offices provided for in § 40-3802.

We understand the above as a legislative directive for the public disclosure of *all sources* of funds to be expended on behalf of a candidates's campaign *which have generated $101 or more in the aggregate.*

It was in loyalty to this legislative directive that we previously held, in the context of a *non*-candidate, that "contribution," as defined by the Act, includes, not only the transfer of personal and non-personal funds to the candidate or his campaign committee for expenditure by

them on behalf of the candidate's campaign, but also the non-candidate's *expenditure* of said funds toward the same end. *Fortson v. Weeks,* 232 Ga. 472, 480 (208 SE2d 68) (1974).

Similarly, we hold here, in the context of a *candidate,* that "contribution" includes, not only the *transfer* of *personal* funds to the candidate's campaign committee for its expenditure on behalf of the candidate's campaign, but also the candidate's *expenditure* of *said* funds toward the same end. Accordingly, when filing the Campaign Financing Written Report, the candidate must list his expenditure of *personal* funds, not only as a campaign expenditure, but also as a campaign "contribution."

*Judgment affirmed. Nichols, C. J., Undercofler, P.J., and Hill, J., concur. Bowles and Marshall, JJ., dissent.*

Argued November 20, 1979 — Decided December 5, 1979.

*Arthur K. Bolton, Attorney General, Linda R. Birrell, Assistant Attorney General,* for appellants.

*Kathleen Kessler, William B. Hollberg, Virginia Carter, Stephen Roberts,* for appellees.

Bowles, Justice, dissenting.

The Campaign and Financial Disclosure Act now being considered is not a model of precision in drafting. Since the Act was first adopted in 1974, it has been amended by the legislature on four occasions. Additionally, the Attorney General has been asked for an opinion on various questions concerning the Act at least 20 times in the five-year period. This is the third appearance in litigation over its construction and application. When we face these truths, it cannot be reasonably argued that the language of the Act is clear and requires no interpretation. This court has two choices in construing the Act. We can give it a liberal interpretation or we can construe it strictly in accordance with its terms. I find two compelling reasons that we should strictly construe the Act. In section 10 of the Act, criminal penalties are provided for its violation. The first violation is a misdemeanor. Subsequent violations are

felonies. The real potential for criminal penalties provided in the Act requires us to strictly construe against the state and in favor of the persons who are subjected to its requirements. See *Burmaster v. State,* 233 Ga. 753, 755 (213 SE2d 650) (1975); *Carsello v. State,* 220 Ga. 90, 94 (137 SE2d 305) (1964) and *Glustrom v. State,* 206 Ga. 734, 738 (58 SE2d 534) (1950). Before the Act was adopted, there was no requirement in Georgia law for public disclosure of campaign financing. The Act imposing such requirements is in derogation of the common law and for this reason I feel that it should also be strictly construed. See *Warren v. Walton,* 231 Ga. 495 (3) (202 SE2d 405) (1973) and *Foster v. Vickery,* 202 Ga. 55, 60 (42 SE2d 117) (1947). The above are well established principles of statutory interpretation and in the absence of any provision in the Act indicating a legislative intent otherwise and in keeping with prior decisions of this court, I feel that the Act should be strictly construed. The Act contains no provision suggesting liberal construction.

The trial court's order which the majority opinion affirms requires a candidate's expenditures *of his own personal funds* for campaign expenses to be reported not only as expenditures but also they must be reported separately as a *contribution* from the candidate to himself. To hold that a person can make a contribution to himself results in a strained and forced construction.

The majority opinion may be well intentioned, and it may be that it would be best to require a candidate to report under the definition of "contributions" those monies which he expends in his campaign. But we should not as a court make conduct penal when the Act itself does not describe the conduct as penal. In affirming this Act, we make criminals out of all those candidates who have heretofore expended their own funds and have not reported them as "contributions." I daresay no district attorney in Georgia would prosecute any candidate who has been so entrapped by the construction of the Act given in the majority opinion.

The Act itself contains a definition of contributions as follows: "Section 3(c): (c) 'Contribution' means a gift, subscription, loan, forgiveness of debt, advance or deposit of money or anything of value *conveyed or transferred for*

*the purpose of influencing the nomination for election* or election of any person for the offices provided for in Section 2, the recall of a public official holding elective office, or the influencing of voter approval or rejection of a proposed constitutional amendment or a statewide referendum, but the term specifically shall not include the value of personal services performed by persons who serve without compensation from any sources and on a voluntary basis. 'Contribution' shall include retainer fee, fees or any other form of payment made to candidates for office or who hold office when such fees and compensation made can be reasonably construed as a campaign contribution designed to encourage or influence the candidate or office holder to introduce legislation which enriches the person, company, corporation or other entity which made the contribution. Introduction of such enriching legislation by the candidate subsequent to his election to office shall be prima facie evidence that the fee, compensation or retainer fee was a campaign contribution under the meaning of this Act. The term 'contribution' shall also encompass transactions wherein a qualifying fee required of the candidate is furnished or paid by anyone other than the candidate. Ga. Laws 1974, pp. 155-162, as amended; Ga. Code § 40-3803(c)." (Emphasis supplied.)

If the Act intended to include a candidate's personal expenditures as contributions, then the last sentence of the above definition excluding qualifying fees when paid by the candidate out of his own pocket would be unnecessary and totally meaningless.

In general, the reporting scheme of the Act appears to be aimed at making the public aware of those who may influence a candidate by their financing of his campaign, thus protecting the integrity of the democratic process. It does not seem reasonable that the legislature thought for one minute that a candidate could influence himself.

If a candidate gives his personal funds to his campaign committee, then the committee as trustee has received a contribution from the candidate and must report it as such under section 6. This is the view of the commission. Additionally, if a candidate personally pays money to someone else for campaign expenses, the

candidate has made an expenditure and must report it as such pursuant to section 7. A candidate cannot receive a contribution from himself. Until he transfers the money there is neither a contribution nor an expenditure. A single transaction cannot simultaneously be both a contribution and an expenditure with relation to the same person.

The Act does not contemplate double entry bookkeeping. There is no human way that the contributions can be balanced against the expenditures on a report, because contributions under $101 are not reported at all and likewise certain expenditures are not required to be reported. Thus, it seems that the clear intent of the Act was for a candidate to report all contributions of as much as $101 when received from outside sources and this is the sensible meaning I get from reading the entire Act.

If this is not correct, the legislature can make a correction as they have heretofore done on four occasions. We should not in the name of judicial interpretation invoke a requirement which is penal when the legislature has not done so. It is not the function of this court to usurp a legislative function by expanding the requirements of the Act beyond those found in a reasonable and common sense reading of the Act as it applies to real and basic situations. To illustrate the extreme, under the majority opinion if a candidate has already expended as much as $101, he cannot make a ten-cent telephone call in furtherance of his campaign without reporting it as a contribution to himself.

I am authorized to state that Justice Marshall joins in this dissent.